State v. Milligan.

the prosecuting attorney may bring the matter before another jury if he shall so elect.

*Sherwood, P. J.,* and *Burgess, J.,* concur.

---

## THE STATE v. MILLIGAN, Appellant.

### Division Two, November 18, 1902.

1. **Forgery:** PROMISSORY NOTE: FIRST OR SECOND DEGREE? The forging of the promissory note of an incorporated bank is forgery in the second degree, and is indictable under section 2001, Revised Statutes 1899; forgery of the promissory note of a private person is forgery in the third degree, and this offense is indictable under section 2009, Revised Statutes 1899.

2. ———: INDICTMENT AND PUNISHMENT UNDER DIFFERENT STATUTES: INSTRUCTIONS. The defendant was indicted for forgery in the third degree under a statute which makes such crime punishable by imprisonment not exceeding seven years. But the instruction which in all other respects met the requirements of that statute concluded with a clause in which the jury were told that if they found defendant guilty the punishment was imprisonment not less than five nor more than ten years—which is the punishment prescribed for forgery in the second degree. The jury found defendant guilty and assessed his punishment at five years, and this the court did not reduce to two years. *Held,* that this instruction was reversible error.

3. ———: POSSESSION AND UTTERANCE: SATISFACTORY EXPLANATION. If the court in a forgery case instructs the jury that the recent possession and utterance of the forged note by defendant, unless satisfactorily explained, are facts and circumstances from which his guilt may be inferred, it is not error for the instruction to fail to inform the jury what facts would satisfactorily account for defendant's possession of the forged instrument. If defendant was cognizant of such facts it was his own fault that he did not make them known.

Appeal from Harrison Circuit Court.—*Hon. P. C. Stepp,* Judge.

REVERSED AND REMANDED.

*J. M. Sallee* and *Wanamaker & Brown* for appellant.

(1) In the instruction given on the part of the State, over the objection of the defendant, the court, after attempting to define the offense charged in the indictment, directs the jury that if they find the defendant guilty they will assess his punishment at imprisonment in the penitentiary for a term not less than five years, nor more than ten years. This instruction constituted reversible error. State v. Sands, 77 Mo. 118; State v. McNally, 87 Mo. 658; State v. Tull, 119 Mo. 421. (2) Instruction 2, on the part of the State, is erroneous in that it fails to inform the jury what facts and circumstances would reasonably and satisfactorily account for the defendant's possession of the forged instrument. If the defendant gave a reasonable account of his possession of the note, then this account overcame any presumption arising from such possession, and threw the burden of disproving this account, as given by the defendant, on the prosecution. Jones v. State, 30 Miss. 653; Belot v. State, 36 Miss. 96; Garcia v. State, 26 Tex. 209; Stokes v. State, 58 Miss. 677; Perry v. State, 41 Tex. 488. In the case at bar the defendant explained in detail when, where and from whom he received the note in controversy. He took this note, together with another one, in payment of what one R. L. Koffman owed him, and he gave the various items and what they were for, that were embraced in the entire account to make up the total amount of these notes, and the evidence of Dr. Williams shows conclusively that this defendant did not attempt to pass these notes on Dr. Williams, but that Dr. Williams accosted him and asked him if he could pay him his bill or a part of it. The defendant replied that he could not pay it unless Dr. Williams would take a note that he had. He had the note at the time in his pocket, and the defendant went down to the office with Dr. Williams and made the trade, turning over to the doctor the note in controversy. After this explanation, and after the defendant's having gone into detail and explained that the man, Koffman, had turned over these notes to him according to a prearrangement with him on what he

owed the defendant, the jury certainly ought to have been told that if they believed these facts to be true they were amply sufficient to rebut the presumption of guilt arising from the possession of the instrument alleged to have been forged.

*Edward C. Crow,* Attorney-General, for the State.

The instruction followed the language of the indictment. Even if the contention of defendant's counsel is correct that the indictment charged forgery in the third degree instead of the second degree, it must be admitted under the statute (sec. 2649, R. S. 1899), which provides that, ''where the jury find a verdict of guilty and fail to agree upon the punishment to be inflicted or do not declare such punishment by their verdict, or assess a punishment not authorized by law . . . the court shall assess and declare the punishment and render judgment accordingly,'' the circuit court acted properly in fixing the punishment. This is what the court did in the case of State v. Tull, 119 Mo. 422, and the Supreme Court approved the action of the trial court and in said above-mentioned case the charge was forgery of a promissory note and the circuit court made the mistake in the instruction as to the punishment that it is claimed was made in this case, and when the court's attention was directed to it, the punishment was by the circuit court reduced to two years, and the action of the lower court was approved and held to be valid. The jury passed upon the question of the guilt or innocence of the defendant and found him guilty, and the alleged error in the instruction relative to the punishment did not prejudice the defendant on the question of the guilt or innocence, as charged. If the circuit court had fixed the punishment upon the verdict being returned at two years instead of five, there could be no question of its being legal under the decision in 119 Mo. 422. This court has decided that it has authority to remand a case to assess the punishment which the jury should have assessed. 153 Mo. 576; 102 Mo. 541; 115 Mo. 448.

BURGESS, J.—Defendant was convicted and his punishment fixed at imprisonment in the penitentiary for the term of five years under an indictment charging him with forging a promissory note. He appeals.

The indictment, so far as is necessary to quote it, reads as follows: "That E. P. Milligan, on the 20th day of September, A. D. 1898, at the said county of Harrison, did then and there, unlawfully, and feloniously forge, counterfeit and falsely make a certain instrument in writing, to-wit, a promissory note, purporting to be the act of S. H. Hefner and R. W. Buzzard, by which a pecuniary demand and obligation for the payment of sixty-five dollars by the said S. H. Hefner and R. W. Buzzard to E. P. Milligan or order, twelve months after date, purporting to be created, which said falsely made and forged instrument is of the tenor following, that is to say: '$65.00. Bethany, Mo., Sep. 20, 1898. Twelve months after date we promise to pay to E. P. Milligan or order sixty-five dollars for value received and interest thereon from date at the rate of eight per centum per annum, which shall be due, and payable annually, and if the interest is not paid annually it shall be added to and become a part of the principal and bear interest at the same rate.'"

The facts are that defendant, who lived with his family near Ridgeway in Harrison county, in September, 1898, was indebted to Dr. A. W. Williams of that place on a bill for professional services, and the doctor called upon him for a settlement. They then went together to the doctor's office, when Milligan said to him that he had a promissory note for $65 signed by R. W. Buzzard and S. H. Hefner who lived in that vicinity; that he had no money, but if the doctor would take the note he would assign it to him. He stated to the doctor that he had sold to Bob or Robert Buzzard a mare and colt or two colts, and Buzzard had given him the note with Hefner as security. The account of the doctor against defendant amounted to $33, the difference being $32, which the doctor then paid defendant and took an assignment of the note. That was in

September, 1898.    The note bears date the 20th of that
month.

During the same fall Williams spoke to Buzzard
and Hefner about the note, and they both denied having
signed it.    Thereafter he met the defendant and told
him that the men whose names were on the note claimed
that they had not signed it, and that he had better fix
it up.    Defendant then said to Williams that he had a
little house and lot in Loraine, and five acres of tim-.
bered land which he offered to sell to him.    Williams
did not take the property, and soon after this conver-
sation defendant left the neighborhood and was absent
about ten months and went to Omaha, Nebraska, and
from there to St. Joseph, Missouri, where he worked
in a dairy, to which last-named place his wife wrote
to him letters addressed to him in his own name, but
he had trouble with his mail and thereafter by his re-
quest she wrote to him as B. F. Carter, box 235, St.
Joseph, Mo., this being the address of the person for
whom he was then working.    While at St. Joseph he
returned home, got off the train at the station and, with
out going through town, went to the home of a relative
where his wife was staying.

The court over the objection and exception of de-
fendant instructed the jury on behalf of the State as
follows:

"1.    The court instructs the jury that if they be-
lieve from the evidence beyond a reasonable doubt that
the defendant, T. P. Milligan, within three years next
before January 20, 1899, at the county of Harrison, in
the State of Missouri, did forge, counterfeit and falsely
make a certain promissory note set forth in the indict-
ment, by which a pecuniary demand and obligation for
the payment of sixty-five dollars by R. W. Buzzard and
S. H. Hefner to E. P. Milligan was purported to be
created by attaching as makers thereto the names of
R. W. Buzzard and S. H. Hefner without the consent
of the said R. W. Buzzard and S. H. Hefner, with intent
then and there and thereby to injure and defraud any
person, then the jury will find the defendant guilty and

assess his punishment at imprisonment in the penitentiary for a term of not less than five years nor more than ten years.

"2. The court instructs the jury that in order to find the defendant guilty under the indictment, it is not necessary for the State to prove by direct evidence, that is, it is not necessary for witnesses who saw the act done, that the defendant signed the names of R. W. Buzzard and S. H. Hefner, to the note in controversy, but the same may be inferred from the proof of other facts and circumstances in the case; therefore, if the jury find and believe from the evidence that the said note was in the possession of the defendant, in the county of Harrison, recently after the same is dated and purports to have been executed, and if they further believe that the defendant sold and delivered said note as a genuine note to the witness Williams, then these facts if proven, unless satisfactorily explained by the defendant, will warrant you in finding that the names of R. W. Buzzard and S. H. Hefner were actually written and signed by the defendant; and you will find the defendant guilty as defined in other instructions.

"3. The court instructs the jury that flight raises the presumption of guilt; therefore, if the jury believe from the evidence that the defendant recently after the commission of the offense alleged in the indictment fled from Harrison county to avoid arrest and trial for the forging of the note offered in evidence, then you may take this fact into consideration in determining his guilt or innocence.

"4. The court instructs the jury that the defendant and his wife are competent witnesses in his behalf, but the fact that he is the defendant and that she is his wife, on trial, and the interest he has in his own case and she has as his wife in same, may be considered by the jury in estimating the weight to be given to their testimony.

"5. The court instructs the jury that if they have a reasonable doubt of the defendant's guilt, they must

acquit him, but such a doubt of the defendant's guilt to authorize an acquittal, must be a substantial doubt arising from a full and fair consideration of all the facts and circumstances in proof and not a mere possibility of his innocence.

"6. The court instructs the jury that they are the judges of the credibility of the witnesses, and the weight to be given to their testimony; that the degree of credit due a witness should be determined by his character and conduct, by his manner upon the witness stand, his relation to the parties and to the controversy, his hopes and fears, his bias or impartiality, the reasonableness or otherwise of his statement, the strength or weakness of his recollections; and if you believe that any witness has knowingly testified falsely to any material facts upon the trial, you are at liberty to reject the whole of such witness's testimony."

At the request of defendant, the court gave to the jury the following instructions:

"1. The court instructs the jury that before they can find the defendant guilty of forgery, in this case, as charged in the indictment, they must find and believe from the evidence, beyond a reasonable doubt, that the defendant, E. P. Milligan, on or about the 20th day of September, 1898, at Harrison county, Missouri, did unlawfully and feloniously and without authority sign the name of R. W. Buzzard and S. H. Hefner to a note calling for the sum of sixty-five dollars made payable to himself, as set out in the indictment, with the intent to injure and defraud, and unless the jury so find they must find the defendant not guilty.

"2. The court instructs the jury that if they should find and believe from the evidence in this case, that one R. L. Coffman was indebted to the defendant and that on or about the 20th day of September, 1898, he informed the defendant that R. W. Buzzard was indebted to him and that he would secure said Buzzard's note with good and sufficient security, payable to the defendant E. P. Milligan, in satisfaction of what he owed said Milligan, and that said R. L. Coffman

delivered to said defendant the note mentioned in the indictment in this case, and that the defendant accepted said note without any knowledge that the same was forged, then the jury must find the defendant not guilty, and this is true although the jury should find that the note was in fact forged.

"3. The court instructs the jury that although they may find and believe from the evidence that the note in controversy was forged by some person other than defendant, this fact if found to be a fact by the jury, would not alone warrant the jury in finding the defendant guilty and you should acquit the defendant.

"4. The court instructs the jury that the law presumes the defendant to be innocent of the crime charged, and this presumption surrounds and protects him throughout the entire trial until it is overcome by the evidence in the case that establishes and proves his guilt to your satisfaction beyond a reasonable doubt. A juror is understood to entertain a reasonable doubt when he does not have an abiding conviction of the truth of the charge to a moral certainty, and unless you are thus convinced you must find the defendant not guilty."

The defendant prayed the court to further instruct the jury as follows, to-wit:

"5. The court instructs the jury that the fact that the defendant had the note alleged to have been forged in his possession raises no presumption of his guilt."

Which instruction the court refused to give. To which refusal of the instruction thus prayed the defendant by his counsel then and there excepted.

It is claimed that the first instruction given upon the part of the State is predicated upon the theory that the indictment was drawn under section 2001, Revised Statutes 1899, when in fact it was drawn under section 2009, Revised Statutes, supra, and, therefore, the instruction erroneous.

Section 2001 reads as follows: "Every person who shall forge or counterfeit, or falsely make or alter

or cause or procure to be forged, counterfeited or falsely made or altered: First, any promissory note, bill of exchange, draft, check, certificate of deposit, or other evidence of debt, being or purporting to be made or issued by any bank incorporated under the laws of this State, or of any other State, Territory, government or country; or, second, any order or check being or purporting to be drawn on any such incorporated bank, or any cashier thereof, by any other person, company or corporation, shall, upon conviction, be adjudged guilty of forgery in the second degree."

Section 2009 is as follows: "Every person who, with intent to injure or defraud, shall falsely make, alter, forge or counterfeit any instrument or writing, being or purporting to be the act of another, by which any pecuniary demand or obligation shall be or purport to be transferred, created, increased, discharged or diminished, or by which any rights or property whatsoever shall be or purport to be transferred, conveyed, discharged, increased or in any manner affected, the falsely making, altering, forging or counterfeiting of which is not hereinbefore declared to be a forgery in some other degree, shall, on conviction, be adjudged guilty of forgery in the third degree."

It will be observed that the promissory note or other evidence of debt mentioned in section 2001, supra, must be one being or purporting to be made or issued by some incorporated bank or cashier thereof, and that any person guilty of violating its provisions is guilty of forgery in the second degree. Section 2009, supra, is leveled at persons who "with intent to injure and defraud shall falsely make, alter, forge or counterfeit any instrument or writing, being or purporting to be the act of another, by which any pecuniary demand or obligation shall be or purport to be transferred," and provides that any person violating its provisions shall be guilty of forgery in the third degree.

The punishment under our statute (sec. 2024, R. S. 1899) for forgery in the second degree is imprisonment in the penitentiary for not less than five nor more than

ten years, and for forgery in the third degree by the like imprisonment not exceeding seven years.

It is too clear for argument that the indictment was drawn under section 2009, while the instruction under consideration was in accordance with the indictment, that is, for forgery in the third degree, with the exception of the punishment: with respect to which the jury were inadvertently told, that if they found defendant guilty they would assess his punishment at imprisonment in the penitentiary for a term of not less than five nor more than ten years, instead of two to seven years. They assessed defendant's punishment at imprisonment in the penitentiary for a term of five years which was within the maximum and minimum limit. How was defendant injured?

In the case of the State v. Sands, 77 Mo. 118, an instruction which overstated the maximum fine and omitted to state the minimum term of imprisonment for the offense, was held erroneous, although the punishment assessed by the jury was within the limit, as in the case at bar, as to the imprisonment prescribed by the law both as to fine and imprisonment. There is no difference in principle between the rule announced in that case and the one at bar. To the same effect is State v. McNally, 87 Mo. 658.

The State, however, relies on the case of State v. Tull, 119 Mo. 421, as announcing a different rule, but in that case, while the court erroneously charged the jury that they might assess the punishment of defendant at from five to ten years, instead of from two to seven years, they found him guilty and assessed his punishment at five years, which the court subsequently reduced to the lowest possible punishment, and it was ruled that defendant was not prejudiced thereby and had no cause to complain. But in this case the punishment was not reduced, and in this very important particular differs from that case. If, in the case at bar, the punishment had been reduced to the lowest limit, that is, two years in the penitentiary, then that case would be directly in point, but as that was not

done it is not an authority for the State in this case.

It is said that the court erred in giving instruction number two in that it fails to inform the jury what facts and circumstances would reasonably and satisfactorily account for the defendant's possession of the forged instrument. But the law imposed no such burden upon the court, for if defendant was cognizant of such facts it was his own fault that he did not disclose them to the court and jury, and if he had done so it would have been the province of the jury under the instructions of the court to pass upon the sufficiency of them. The instruction is in accordance with the rule announced in the case of the State v. Yerger, 86 Mo. 33, wherein it is said that the possession of a forged instrument, or the uttering of it by one in the county where the indictment is found, is strong evidence not only to show that he forged it, but to show that the forgery of the instrument was committed by him in the same county. [State v. Burd, 115 Mo. 405.]

There was an abundance of evidence to take the case to the jury, whose province it was to pass upon its weight and sufficiency.

For the reason intimated the judgment is reversed and the cause remanded.

All of this Division concur.