[No. 3063 Jan. 11, 1927]

## STATE v. SMITH

[252 Pac. 1003]

### SYLLABUS BY THE COURT

1. An indictment for forgery of a promissory note set forth in haec verba, including the signature "A.," need not allege that it purports to be A.'s signature.

2. An indictment for forgery, alleging, in the language of the statute, that the act was unlawfully, falsely, and feloniously done, sufficiently exclude authorization by the person whose act it purports to be.

3. Evidence examined, and held sufficient to withstand motion to direct verdict.

[1] 26CJ p. 939 n. 17. [2] 31 CJ p. 716 n. 23. [3] 26CJ p. 979 n. 4. [4] 17CJ p. 350 n. 7; 26CJ p. 978 n. 72; p. 979 n. 89. [5] 16CJ p. 599 n. 2. [6] 40 Cyc p. 2687 n. 93. [7] 26CJ p. 904 n. 2. [8] 26CJ p. 967 n. ... . ... ... ... [10] 26CJ p. 896 n. 4.

4. Error to refuse tendered instructions, correctly stating the law, not covered in the general charge, except in the abstract, and applying the law to defendant's theory of the facts which there is evidence to support.

5. Another forgery by the defendant is competent as bearing on intent to defraud, where he claims that the false instrument he is charged with making was the result of mistake. Evidence examined as to such other false instrument, and defendant held sufficiently connected with it to admit of its reception.

6. Where state seeks to prove forgery by circumstantial evidence, including the fact that others having opportunity did not do it, a defense witness, testifying on cross-examiation that he cannot state whether the handwriting is that of one of the others having opportunity, may be impeached by showing that on a former occasion he had stated it was not the handwriting of such other person.

7. General intent to injure or defraud is sufficient for conviction of forgery, and intent to injure or defraud a particular person need not be alleged nor proved.

8. While the fact that no one was injured or defrauded is not a defense in forgery, the jury should be permitted to consider the fact as bearing on intent.

9. That the defendant, as vice president, indorsed the bank's name on a forged note, of which the bank was payee, and rediscounted it or used it as collateral, is a circumstance to be considered by the jury, with others, if any, and given such weight as the jury may think it entitled to.

Appeal from District Court, Quay County; Hatch, Judge.

Ben Smith was convicted of forgery, and he appeals. Reversed and remanded, with direction.

G. L. Reese, of Roswell, Hall & McGhee, of Clovis, Geo. L. Reese, Jr., of Roswell, and J. L. Briscoe, of Tucumcari, for appellant.

J. W. Armstrong, Atty. Gen., and J. N. Bujac, Asst. Atty. Gen., for the State.

WATSON, J.    Ben Smith was convicted of the forgery of a promissory note in the sum of $393.70, dated January 5, 1924, payable two months after date to Security State Bank of Portales, of which Smith was vice president and active manager, and purporting to

bear the signature of Jap Post. This instrument was introduced in evidence as Exhibit 2, and will be hereinafter referred to in that manner.

From the testimony of Jap Post, the prosecuting witness, the jury might have believed:   That Post had executed to the bank, and it held, four notes, namely:  A $50 note, dated August 11, 1923; due in three months; a $102.50 note dated August 13, 1923, due in three months; a $40.50 note, dated October 8, 1923, due in one month; and a $41.00 note, dated December 29, 1923; due in one month.   That from time to time, as these notes matured, Post was notified thereof by the bank, and told appellant that he would pay as soon as he could and would renew the notes if that was desired, and that appellant replied, ''That is all right, Jap.''   That about 10 days prior to March 3, 1923, Post called at the bank and inquired of appellant about his notes, and was told by appellant that they were in the Federal Reserve Bank and would be back the first of March.   That on March 3 he called at the bank and told appellant that he was ready to settle his notes, and asked if they had been returned. That appellant said:  ''I don't know, Jap; I will go see.''   That appellant and Post went together to the note case, from which appellant raised certain papers to such an extent that Post was enabled to see Exhibit 2, appellant saying, ''Jap, your notes are not here; here are the stubs,'' dropping the papers back into the note case.   That Post then left the bank and waited outside until he saw appellant leave, when he returned to the bank and inquired of C. R. Young, an employee of the bank, about the notes.   That Young proceeded to the note case and took therefrom the papers which appellant referred to as ''stubs,'' which included Exhibit 2, folded and attached to which were the genuine notes above mentioned, which were introduced in evidence together as Exhibit 1, and another note introduced as Exhibit 3 for $194.35, dated December 11, 1923, payable one month after date to said bank and purporting to bear the signature of Post, but which Post denied having signed.   That

Post thereupon denied having signed Exhibits 2 and 3. That during the ensuing discussion appellant returned to the bank, whereupon Young said to him, ''Jap's denying two of these notes:'' That appellant insisted that Post had signed them, and, upon Post's again denying the signatures, said, ''The books will show,'' went to the books, and, after inspecting them, said that Exhibit 3 was to take care of three little notes, said something about Exhibit 2 and then turned to Young and said: ''Those are not Jap's notes; go ahead and settle with him.'' That thereupon Young and Post effected a settlement by Post giving to the bank his note for some $251 and receiving from Young the six notes which have been described. That some time after the closing of the bank, which occurred on March 31, 1924, appellant came out to Post's place of business, situated some miles from Portales, and said that he had heard that Post had been claiming that his name had been forged to some notes, and that he had come out to see about it. That he had a record of the transaction, and that if he could see the notes he could make an explanation of it. That Post refused to let him see the notes, and that appellant showed no record, simply explaining that it was a mistake.

Exhibits 2 and 3 showed, by the indorsements which they bore, identified and explained, that they had been either discounted or used as collateral at the Federal Reserve Bank. Above the Federal Reserve indorsement on Exhibit 2, there was indorsed ''Security State Bank, Portales, New Mexico, by Ben Smith, Vice Pres.'' and, on Exhibit 3, ''Security State Bank, Portales, New Mexico, by M. B. Jones, Cashier.'' The state further showed by opinion evidence that Exhibits 2 and 3 were made by the same hand, but not by the same hand that made the four notes constituting Exhibit 1, and that the signatures on Exhibits 2 and 3 were an attempt to imitate those on Exhibit 1. J. M. Honea, Jr., C. R. Young, employees, and M. B. Jones, cashier of the bank, testified that they did not write the signatures on Exhibit 2.

Appellant denied having made Exhibit 2 or 3, or having written Post's purported signature thereto. Witnesses familiar with appellant's handwriting gave their opinion that the purported signatures to Exhibit's 2 and 3 were not in his hand. C. R. Young testified that on January 5, 1924, he was in the employ of the bank and in direct charge of the note case, under the general supervision of the appellant, and that among his duties was the making up of offerings of rediscounts to the Federal Reserve Bank; that these offerings consisted usually of a number of notes, and that it was the custom to get them together and prepare the bank's indorsement on the typewriter, except for the signature of appellant, as vice president, or of Mr. Jones, as cashier, one of them merely signing his name and returning the notes to him; that on that day, in making such offering, he discovered that three of the genuine Post notes were past-due and not available for rediscount; that, knowing the custom of the bank to keep on hand notes signed in blank by borrowers, to be used by the bank for renewing paper and under other circumstances, he went to the file where such were kept and found a blank note, apparently signed by Jap Post; that Exhibit 3 was with the three notes mentioned, and failing to notice that the same was evidently a renewal of said three, he filled out the blank for an amount equal to the sum of said three notes, of Exhibit 3, and of the accrued interest thereon, the paper thus produced being Exhibit 2.

This is perhaps a sufficient statement of the evidence in the case to permit consideration of the points raised.

[1] Objections are made, first, to the sufficiency of the indictment. It is urged that it is insufficient, in that it fails to allege that the signature on Exhibit 2 purports to be that of Jap Post. The alleged false instrument having been set forth in full, we think there is no merit in this contention. Edwards v. State, 53 Tex. Cr. R. 50, 108 S. W. 675, 126 Am. St. Rep. 767, is quite different. In that case additional allegations

were necessary because it chanced that the defendant and the person whose signature he forged bore the same name

[2] It is also urged that the indictment should have alleged that the note was made without Post's authority. The indictment follows the language of the statute. Code 1915, § 1590. The allegation that the act was unlawfully, falsely and feloniously done, sufficiently excludes authorization, just as, in State v. Probert, 19 N. M. 13, 140 P. 1108, an allegation of fraudulent embezzlement and conversion included, by necessary intendment, an intent to defraud. Generally as to the sufficiency of an indictment following the language of the statute, see State v. Alva, 18 N. M. 143, 134 P. 209; State v. Lazarovich, 27 N. M. 282, 200 P. 422; State v. Nance, 32 N. M. 158, 252 P. 1002. As to technical defects not prejudicing the defendant, or depriving him of the right to plead former jeopardy, see State v. Lucero, 20 N. M. 55, 146 P. 407.

[3] Error is urged upon the overruling of appellant's motions for a directed verdict, made both at the close of the state's case, and at the close of the case. Whether objection to the overruling of such a motion made at the close of the state's case is available to one who has not stood upon it in the trial, but has, after the overruling of the motion, introduced evidence in his own behalf, is a question not here raised, and, in view of our conclusion, unnecessary to decide. The state, arguing the sufficiency of the evidence, points to the rule that the recent possession and utterance of a forged instrument is sufficient to warrant a conviction of the forgery, citing State v. Milligan, 170 Mo. 215, 70 S. W. 473. Appellant does not question this in its general application, but insists that such possession and utterance must be personal and exclusive; and that possession and utterance by a bank is not sufficient upon which to base a conviction of the agent of the bank who acted in that behalf. We find it unnecessary, however, to decide the question. We think the attorney general has unnecessarily narrowed

it in argument. When the state rested, the jury might have found from the evidence then before them, not only that some one had written Post's name in the effort to imitate his signature, and that appellant had indorsed the note for the bank with a view to using it as a rediscount or collateral at the Federal Reserve Bank, but, further, that appellant had misrepresented to Post that his genuine notes had not been returned from the Federal Reserve Bank; had readily discovered and admitted the alleged error when Post had learned of the existence of the spurious notes; had thereafter visited Post, claiming that he could satisfactorily explain the matter, and seeking to obtain possession of the notes, and that the forgery had not been committed, by some at least, of those who were in a position to have done so. We cannot doubt that, in view of the proof, the court was justified in overruling the motion.

We need take no space in discussing the motion for directed verdict subsequently made at the close of the case. The result of the after-adduced evidence was to strengthen the state's case, considering, of course, only the evidence pointing to guilt.

[4] So we overrule those of appellant's objections which, if sustained, would have entitled him to a discharge. We find, however, that we must reverse the judgment and grant a new trial because of the refusal to give requested instructions Nos. 2, 3, and 4, as follows:

"No. 2. The court instructs the jury that the possession or negotiation of a forged instrument is not forgery, and that should you believe from the evidence that such instrument was forged, and that the defendant had in his possession such forged instrument, if it be forged, and that the defendant negotiated such instrument to the Federal Reserve Bank, or caused the same to be negotiated, yet you cannot find the defendant guilty unless you further believe from all the evidence and beyond a reasonable doubt that the defendant made such forged instrument, or caused it to be made or participated in the making thereof.

"No. 3. The court instructs the jury that if you believe from the evidence in this case that C. R. Young

found the note set out in the indictment, in the bank, and that at the time he found such note in the bank it was signed in blank in the purported signature of Jap Post, and that the said C. R. Young thereupon filed out said note, setting out the sum of $393.70 therein as the principal of said note, without any authority, or direction from the defendant, Ben Smith, then you cannot convict the defendant of forgery and you should acquit him.

"No. 4. You are instructed that the defendant, Ben Smith, is the only person on trial before you for the alleged crimes charged in the indictment, and if you find from all the evidence in this case that it points to some other person as the person who made the note, or signed the note set out in the indictment without the direction or authority of the said defendant, as the person who committed the alleged crime in question as it does the defendant, or if, after a fair and full consideration of all the evidence, you entertain a reasonable doubt as to whether the said Ben Smith or some other person is the guilty party, if any one be guilty of such charge, then it is your duty to acquit the defendant."

These requests seem clearly to state the law and are not covered by the general charge. As to request No. 2, it may be mentioned that instruction No. 11, as given, in effect told the jury that if Exhibit 2, after its making, was in appellant's possession, and was by him negotiated as a genuine note to the Federal Reserve Bank, such facts, unless satisfactorily explained, would warrant a finding that appellant actually wrote the name of Jap Post upon said note, and would warrant a verdict of guilty. Assuming, for the moment, that this was a correct instruction, we think appellant was entitled to have it made plain to the jury that they should not convict merely because satisfied as to possession and utterance, unless those facts caused them also to be satisfied as to the forgery. It is to be remembered that there was in this case an explanation of the possession and utterance of the note consistent with the forgery of it by some person other than the defendant. The jury, of course, was not required to believe such explanation. Yet its presence in the case, we think, made it important that the jury be clearly instructed as to the difference between the ultimate fact of forgery and the merely probative facts of possession and utterance.

* As to request No. 4: It was appellant's theory that Young found the note signed in blank, and without appellant's knowledge, filled it in in the amount and in renewal of the three genuine and the one false notes; and that the evidence merely included appellant among a number who had opportunity, and might have forged the signature.

" * * * Where circumstances alone are relied upon * * * for a conviction, the circumstances must be such as to apply exclusively to the defendant, and such as are reconcilable with no other hypothesis than the defendant's guilt. * * * Territory v. Lermo, 8 N. M. 566, 46 P. 16.

The state's case was circumstantial. The jury was correctly instructed that, to warrant conviction, the circumstances must be such as to be incompatible upon any reasonable hypothesis with innocence of the defedant; but that was a mere abstract proposition. Appellant was entitled to have it applied to his theory of the case, which there was evidence to support. State v. Brigance, 31 N. M. 436, 246 P. 897.

In view of the necessity of a new trial, some of the other assignments of error require consideration, though not necessarily to determine whether they constitute reversible error.

It is contended that the court erred in admitting in evidence Exhibit 1 (the four genuine notes), Exhibit 2 (the note set forth in the indictment), and Exhibit 3 (the note for $194.35.) The contention is that they were not admissible because the appellant had not been and was not shown to have committed the forgeries. What we have said as to the sufficiency of the evidence would seem to dispose of this point, as it bears on Exhibits **1** and **2**.

[**5, 9**] As to Exhibit 3, the situation is somewhat different. It was admitted on the theory that it was evidence of a separate offense, competent as tending to show a general plan, or design, to defraud, and the intent with which Exhibit 2 was made. In defending the admission of this exhibit, on this theory, the state assumes that appellant's signing of it was shown

by the same evidence as his signing of Exhibit 2. Appellant points out, however, that this is not true. Exhibit 3, like Exhibit 2, bore indorsements showing rediscount with the Federal Reserve Bank, or its use there as collateral. But, unlike Exhibit 2, the indorsement of the Security State Bank on Exhibit 3 was made by M. B. Jones, cashier. Thus, as to Exhibit 3, the possession and utterance which, with other facts, we hold sufficient to warrant conviction, were not only absent, but the proof indicated that another than appellant had had possession and had uttered. The facts which raise an inference, according to the state's contention, that appellant forged Exhibit 2, would raise an inference that another forged Exhibit 3. We think, nevertheless, that this was a matter for the consideration of the jury. It is laid down in Wharton (Cr. Ev. § 34) that in forgery the independent or collateral offense "must be proved with the same fullness and the same directness as is the instrument which the accused is charged with forging or uttering, or evidence of it cannot be received." That does not mean, of course, that the evidence must be the same as to both, but merely that the collateral offense must be proven by evidence which would suffice as proof of the offense charged. The state's evidence showed that both notes were made by the same person. Both had been used as collateral or rediscount at the Federal Reserve Bank. Both were found together in the note case. Both involved the account of the same borrower from the bank. Both were admitted to be mistaken, and appellant claimed to be able to explain both. When Exhibit 3 was introduced, the burden was upon the state to prove general intent to defraud. True, that might be inferred from the act, but the state was not compelled to rely on inference. It had a right, as against the claim of mistake which appellant had made, to produce evidence showing a course of conduct indicating a design to defraud, and not so readily explainable as a mistake as one act would have been. Exhibit 3 could not be used as proof that it was appellant who forged Exhibit 2, but if the jury

was convinced from other evidence that appellant forged Exhibit 2, it would be warranted in believing that he forged Exhibit 3; and that fact, if believed, would be material on the question of intent. The fact that Exhibit 3 was indorsed for the bank by Jones instead of by appellant goes to a different question. It affects the question of knowledge in uttering, rather than of intent in forging. The fact was no doubt favorable to the accused, but not conclusive. We think Exhibit 3 was properly admitted for the purpose stated, if for no other.

Several witnesses testified on behalf of appellant that the signatures on Exhibits 2 and 3 were not in appellant's handwriting. On cross-examination, they were asked, in substance, whether if they were in appellant's handwriting they were not so cleverly "forged" or "concealed" that appellant's handwriting could not be recognized. It is urged that the questions repeatedly asked were purely argumentative and tended to prejudice appellant's case by constantly impressing upon the jury the district attorney's theory that the signatures were in fact written by appellant. Two of the witnesses answered without objection, and two others over objection not now urged. Only once was it objected that the question was so worded as to be prejudicial. A reversal could not be granted under the circumstances. If proper and timely objection had been made, the trial court would no doubt have required the district attorney so to frame his question as to avoid unnecessary and improper prejudice.

[6] In its case in chief, the state had shown that neither Honea nor Young nor Jones had signed Exhibit 2. Honea afterward became a witness for the appellant, and, on cross-examination, it was shown that certain others had access to the files of the bank and might have signed Exhibit 2. Among them was Curtis Boone. Honea was then asked if Exhibit 2 was Curtis Boone's handwriting, and he replied that he could not state. A predicate having been laid, four witnesses, including the district attorney, were allowed to

impeach this answer by showing that on a former oc-
casion the witness had said that such signature was
not Boone's handwriting. It is urged that this was
impeachment on a collateral matter. We do not think
so. One of the means employed by the state to fas-
ten the forgery upon appellant was to show that others
who might have done it had not done it. In view of
this process of elimination, the fact that Boone did not
do it was not collateral, but directly bore upon the
question whether appellant did it. It is also urged
that since the answer sought to be impeached was
brought out by improper cross-examination, the state
made Honeo its own witness as to that answer ,and so
could not impeach him; but that was not the objec-
tion urged below.

The correctness of paragraphs 9, 10, and 11 of the
court's instruction is challenged. Those paragraphs
read as follows:

"(9) You are instructed that it is unnecessary to conti-
tute the offense of forgery that the person or persons
charged with such an offense intended to defraud or in-
j, re any particular person or that any particular person was
injured or defrauded. It is sufficient to constitute the of-
fense if it is established that the accused with the intent
to defraud signed the name of the person who purports
to be the maker of said note, and that the name was
signed without authority from such person, and if it
further appears that the promissory note, if true, would
have the effect to affect the interest and rights of the
person whose act it purports to be, and in this connection
you are instructed that if you believe from the evidence
and beyond a reasonable doubt that the instrument in
writing set out in the indictment and produced in evidence
was not made by Jap Post, but that it is a false instru-
ment, and that it was made by the defendant without law-
ful authority with intent to injure or defraud, this would
constitute forgery.

"(10) You are further instructed that the fact, if it
be a fact, that no person suffered any injury by reason
of any acts charged against the defendant herein, is not
to be considered by you in arriving at your verdict as to
his guilt or innocence; if you believe beyond a reasonable
doubt that the prosecution has proved the truth of the
allegations in the indictment, you should find the defend-
ant guilty, regardless of the question whether or not any
injury resulted to any one as a consequence of his act.
Therefore the question whether or not any third party

suffered any pecuniary loss as a result of the defendant's conduct is a question which should not be considered by you in your deliberations and determining his guilt or innocence.

"(11)   I further instruct you that in order to find the defendant guilty under the indictment, it is not necessary for the state to prove by direct evidence, that is, it is not necessary for witnesses to testify who saw the act done, that the defendant signed the name of Jap Post to the note set forth in the indictment, but the same may be inferred from other facts and circumstances proved in the case, if any have been proved.   Therefore if you find and believe from the evidence that said note was in the possession of the defendant in the county of Roosevelt recently after the same was dated and purports to have been executed, and if you further believe that the defendant negotiated said note as a genuine note to the Federal Reserve Bank, then these facts, if proven, unless satisfactorily explained by the defendant, would warrant you in finding that the name of Jap Post was actually written and signed by the defendant, and you would upon such finding from the evidence be warranted in returning a verdict of guilty."

[7] To the ninth instruction appellant objects that it is not the law that the accused need not have intended to defraud any particular person, and that a mere general fraudulent intent is not sufficient for conviction.   These objections require construction of sections 1590 and 1604, Code of 1915, which are as follows:

"Sec. 1590.   Every person who shall falsely make, alter, forge or counterfeit any public record, or any certificate, return or attestation of any clerk of a court, register, notary public, justice of the peace, or any other public officer, in relation to any matter wherein such certificate, return or attestation may be received as legal proof, or any charter, letter of attorney, policy of insurance, bill of lading, bill of exchange, promissory note, or any order, acquittance or discharge for money or other property, or any acceptance of a bill of exchange, indorsement, or assignment of a bill of exchange, or promissory note, or any accountable receipt for moneys, goods or other property, with intent to injure or defraud any person, shall be punished by imprisonment in the state penitentiary, not more than five years, nor less than one year."

"Sec. 1604.   In any case, when the intent to defraud is necessary to constitute the offense of forgery, or any other offense that may be prosecuted, it shall be sufficient to allege in the indictment an intent to defraud, without naming therein the particular person or body corporate intended to be defrauded; and on the trial of such indictment, it shall be sufficient and shall not be deemed a

variance if there appear to be an intent to defraud the United States, or any state or territory, county, city, or precinct, or any body corporate, or any public officer in his official capacity, or any co-partnership or member thereof, or any particular person."

Appellant points out that by section 1590 "intent to injure or defraud any person" is an essential element of the crime, and urges that, while section 1604 dispenses with the necessity of naming in the indictment the person the accused intended to injure or defraud, it does not dispense with the necessity of proof of such particular intent.

The state cites and relies upon State v. Pilling, 53 Wash. 464, 102 P. 230, Am. St. Rep. 1080. Appellant points out that this case merely holds that a section identical with our section 1604 dispenses with the necessity of allegation, and does not affect the question of proof. This is true.

We have not found any decided case which can be cited as direct authority upon the question. In 26 C. J. title Forgery, § 18, it is said:

"In a number of jurisdictions, because of special legislation on the subject, it is no longer necessary to show an intent to defraud a particular person or persons, a general intent to defraud being sufficient."

In note 9 a number of cases are cited to this text. Examining those cases, we find that the Washington, Iowa, Michigan and Florida statutes are like ours. Unfortunately, the cases in those jurisdictions do not seem directly to support the text. The statutes of New Jersey, New York, Pennsylvania, Louisiana, and Massachusetts expressly dispense with the necessity of proving an intent to injure or defraud any particular person.

[10] While there is an obvious distinction between these two classes of statutes, we think that they must have been induced upon the same theory, and that their legal effect is the same. All of them dispense with the necessity of naming in the indictment the particular person whom the accused intended to in-

jure or defraud. This provision was, no doubt, induced by the fact that it is often a matter of difficulty in such cases to make such proof. In many forgery cases the act itself might result in possible injury to different persons. In the case at bar, the promissory note, in question might have injured Post; it might have injured the Security State Bank, the payee; or it might have injured the Federal Reserve Bank, to which it was uttered. It might be impossible to prove which of these it was intended to defraud, and the circumstances, while raising an inference of a general intent to defraud, might point as strongly to intent to defraud one person as the other. The crime of "forgery" consists in the act of making the false instrument with an intent to defraud. It may be the means of accomplishing a larceny or an embezzlement, or of obtaining money or goods under false pretenses; or it may serve merely to conceal such crimes. The whole transaction may involve several of these crimes. We think that the lawmaking power in the several states, adopting these two classes of statutes, had these matters in mind and intended to take practical measures to make it possible in the ordinary case to convict of the crime of forgery. Where they dispense with the necessity of proof of the particular intent they make their purpose plain. Where they merely dispense with the necessity of allegation, we think the same purpose was in view and the same result accomplished. There may have been a conviction in this case, as appellant urges, though the 12 jurors never reached agreement as to what person or corporation appellant intended to defraud. It may be admitted that as regards most crimes the statutes and rules of pleading and procedure are designed to prevent such a situation. Yet we think, as indicated, that in forgery, for the reasons stated, such is the very result aimed at by the statutory provision quoted. Without an allegation of particular intent, there is no way of limiting the evidence or of limiting the consideration of the jury to one particular intent rather than another. The court cannot select the person whom the jury must consider the ac-

cused intended to defraud, if any one; nor can the jury be required to name him. So proof is no more requisite than allegation, and general intent only is necessary. Such an intent is a natural inference from the doing of the act; and unless the defendant's explanation of the act is sufficient to raise a reasonable doubt as to the correctness of such natural inference, a conviction is proper under the law. So we think that the instruction, as given, is essentially sound.

Appellant urges that, under section 1604 certain classes are named, the intention to defraud one of whom may be shown under an indictment without allegation as to the particular person, and that a proper instruction would confine the jury's consideration to those classes. The criticism is perhaps technically correct. In this case, however, there can be no doubt that if there was a general intention to defraud, the possibility of defrauding was limited to persons included within those classes. It would perhaps be better in the charge to enumerate the classes mentioned in section 1604, but we do not think, in this case, that the failure to do so is reversible error.

[8] Appellant contends that the tenth paragraph takes from the jury consideration of the fact shown that Post suffered no loss or injury by reason of appellant's act; which fact had a possible bearing upon appellant's intent in doing the act. We incline to appellant's view. The explanation which he offered of his part of the transaction was consistent with absence of guilty knowledge or intent. The facts surrounding the discovery of the forgery or mistake, whichever it may have been, and the return of the note to Post, whereby he was secured against loss, would seem to be proper for the jury's consideration in determining whether, if appellant did the act charged, he did it with intent to defraud. Clearly, a loss or injury to the party would be competent as bearing on intent. We think that the converse must be true. The state cites People v. Webber, 44 Cal. App. 120, 186 P. 406, as sustaining this instruction; but appellant points out

that the present objection was not there urged. Without deciding that there is reversible error in this instruction, we think that the evidence should not have been withdrawn from the jury's consideration entirely, but that its effect should have been limited ,by a proper instruction, to its possible bearing on intent.

By the eleventh paragraph the jury was instructed, in substance, that evidence of recent possession and the utterance of a forged instrument, unless satisfactorily explained, is sufficient for conviction. It is objected that this is a comment on the weight of the evidence, and that it places the burden of explanation on the defendant; thus depriving him of the presumption of innocence. In support of the instruction, the state cites State v. Milligan, supra. It was there sustained, over a different objection than that here urged. It was said to be "in accordance with the rule announced in the case of the State v. Yerger, 86 Mo. 33, wherein it is said that the possession of a forged instrument, or the uttering of it by one in the county where the indictment is found, is strong evidence not only to show that he forged it but to show that the forgery of the instrument was committed by him in the same county." Appellant says that this Missouri decision has been overruled and repudiated by later Missouri decisions, citing State v. Swarens, 294 Mo. 139, 241 S. W. 934, and State v. Andrews, 297 Mo. 281, 248, S. W. 967. The first-mentioned case dealt with an instruction to the effect that if stolen property was found in the possession of the defendant, he was presumed to be the thief, and that the burden was upon him to overcome the presumption; and, unless satisfactorily explained, the jury "should find the defendant guilty." The court elaborately considered the question whether the recent possession of stolen property raises a presumption of law, or merely an inference of fact. It held that there is no such presumption at law, and that the inference to be drawn is one solely for the jury, overruling State v. Kelly, 73 Mo. 608, and cases following it. However, the instruction in the case at bar clear-

ly does not go so far into the province of the jury as that in the Swarens Case. In the Andrews Case an instruction "that possession of a forged instrument and an attempt to sell it, are evidence that the possessor forged it," was held bad as contrary to State v. Swarens, supra. We also understand the court in the Andrews Case to doubt the correctness of State v. Pyscher, 179 Mo. 156, 77 S. W. 836, wherein an instruction was sustained to the effect that possession and a claim to the land (the instrument forged being a deed) "constituted evidence that he committed the forgery * * * and unless he explains or accounts for his possession thereof, in a manner consistent with his innocense, then these facts are sufficient to warrant the jury in finding him guilty of forgery * *· *" Assuming instruction No. 11 to be sound in the ordinary case, it is doubtful, as previously indicated, whether it is proper in a case where the possession relied upon is not personal nor exclusive. But, even if it were an ordinary case of possesion and utterance, we are doubtful of the correctness of such an instruction. It being unnecessary to decide the point, we merely suggest that the precedents in this jurisdiction favor an instruction, which we think preferable, to the effect that such possession and utterance are circumstances to be taken into consideration with other facts and circumstances, if any, and given such weight as the jury may think they are entitled to. Territory v. Livingstone, 13 N. M. 318, 84 P. 1021; Territory v. Caldwell, 14 N. M. 535, 98 P. 167; Underhill on Criminal Evidence (2d Ed.) §§ 299 and 300.

Such of appellant's propositions as we have failed to mention we consider either without merit, or as governed by what we have here said.

For the error pointed out in failing to submit appellant's theory of the case, the judgment will be reversed and the cause remanded with direction· to grant a new trial; and it is so ordered.

PARKER, C. J., and BICKLEY, J., concur.