Marshall, C. J.,
 

 dissenting. The majority of this court are of the opinion that the exceptions must be overruled, though there is some variety of opinion in support of the majority conclusion. The question is whether a continuous and uninterrupted transportation of intoxicating liquor through several counties of this state may be prosecuted and punished in each of said counties. Or it may be stated, where a prosecution has taken place in one' county, and another prosecution has been instituted in another county, may the first prosecution be pleaded in bar?
 

 Our state Constitution provides: “No person shall be twice put in jeopardy for the same offense.” Article I, Section 10. The question is therefore whether it is the same offense. It is not disputed, or at least it may be assumed for the purposes of this case, that the transaction in Sandusky county where the former prosecution took place is of the same kind and character as the transaction which took place in Huron county and which became the subject-matter of the second
 
 prosecution;
 
 that is to say, that the offense was one of transportation, and the transportation was conducted in an automobile, and, so far as the record discloses, without the truck being halted in any way at the county line. One of the majority opinions cites the case of
 
 State
 
 v.
 
 Roberts,
 
 152 La., 283, 93 So., 95, 21 A. L. R., 1122. We will assume that the facts of the Louisiana case were exactly the same as the facts in this case. We will not as
 
 *533
 
 sume that the parishes in the state of Louisiana are of the same character as the counties in Ohio. If they are the same, it still inay be doubted whether the interpretations of the civil law, which governs in Louisiana, are identical with the interpretations of the common law, which prevails in Ohio. If all these are the same, then that case is a definite authority for overruling the exceptions. Even so, that authority stands alone among the courts of last resort. A case decided by one of the appellate courts of the state of Missouri seems to be of the same tenor, as shown by one of the majority opinions. It seems, however, that it is not harmonious with the case, of
 
 State
 
 v.
 
 Bacon,
 
 170 Mo., 161, 70 S. W., 473, decided by the Supreme Court of Missouri. In that case there was a charge of embezzlement in one of the counties in Missouri, in which the venue was laid in Douglass county, but it was held that the crime was not complete in Douglass county, and the accused was therefore acquitted. Later the same transaction was the basis of an indictment in Wright county and the former acquittal was pleaded in bar. It was held, however, that the former acquittal Was not a bar to the conviction in Wright county. The law is universal that former jeopardy only applies where there is actual identity between the transactions which formed the basis of the several indictments. Venue is an essential part of the charge of any indictment in this state. A conviction in one county can therefore never be. pleaded in bar to a subsequent prosecution in another county. This principle has been established in the following cases.
 
 Crowder
 
 v.
 
 State,
 
 69 Ark., 330, 63 S. W., 669;
 
 State
 
 v.
 
 Whaley,
 
 2 Har.
 
 *534
 
 (Del.), 532;
 
 Campbell
 
 v.
 
 People,
 
 109 Ill., 565, 50 Am. Rep., 621;
 
 Welty
 
 v.
 
 Ward,
 
 164 Ind., 457, 73 N. E., 889, 3 Ann. Cas., 556;
 
 State v. Bacon,
 
 170 Mo., 161, 70 S. W., 473.
 

 In 16 Corpus Juris, 263, we find the following: ‘ ‘ The prohibition of the common law and of the constitutions is against a second jeopardy for the same ‘offense,’ that is, for the identical act and crime; or, as expressed in a number of eases, to entitle a defendant to plead successfully former jeopardy, the offenses charged in the two prosecutions must be the same in law and in fact. ’ ’ In support of this proposition a very large number of cases are cited.
 

 It is apparent that the act in Huron county is not identical with the act in Sandusky county and that the proof of the offense in one county cannot be identical with the proof in the other. It is too well established to admit of debate that a failure to prove venue is fatal to any prosecution for crime. Surely the best test as to whether the transaction is punishable in each of two counties is whether a complete offense under the statute can be shown to have been committed in each of the counties. It is not clear whether the several majority opinions proceed upon the theory that the transaction was complete in Huron county, or whether it required a transportation in Sandusky county to complete it. If the transportation was complete in Huron county, there was no apparent reason for continuing the transportation into Sandusky county, and defendant’s subsequent course into Sandusky county was therefore another complete transaction, though not physically separable from that portion of it which took
 
 *535
 
 place in Huron county. There must always be a reason for a transgressor of the law carrying his operations into and through several counties. It is quite evident that his purpose is better served by the larger field of operation than it would be by the narrower range. It is equally certain that each of the counties is interested in preventing the transgressions of the law within its territory. It is conceivable that, if the operations were limited to a single county, they would not only be less profitable to the transgressor, but might even be rendered wholly without profit to him. It is so well known that the courts may judicially notice the fact that Pittsburgh, Pennsylvania, and Detroit, Michigan, are abundant sources of supply of contraband liquor. Every county in Ohio is a potential market for such goods. Only a few of the counties could be reached except by crossing other counties. Transportation of liquor is not for the mere sake of transportation, but is only a means to an end. The real purpose is to facilitate purchases and sales. If the supply and the demand were located in the same county in all instances, our present problem would not trouble us. The fact is that the supply is frequently far removed from the demand and requires that the transportation cover from two to twenty counties. The argument that the mere fact that the transportation is continuous makes it a single transaction becomes a fallacy. A continuous act of transportation only facilitates the ultimate purpose of the transgressor and therefore tends to defeat the ultimate purpose of the law itself. In the instant case it is evident that the supply was in Huron county, but the demand was in Sandusky
 
 *536
 
 county. To hold that the continuity of the transaction makes it a single offense is a distinct aid to the transgressor and a distinct detriment to law enforcement.
 

 The several majority opinions are not grounded upon identical reasoning, and this dissenting opinion is therefore placed at a disadvantage. Ordinarily a •dissent should only be required to controvert reasons which are common to at least a majority of the court. We are, however, willing to undertake to answer any reason urged by a single judge. Two of the judges are of the opinion that the county line is only imaginary. It may be admitted that it is only imaginary in the sense that it is invisible, and not marked by monuments or bounded by barriers. An imaginary thing is something which has no existence except in the imagination. It is in this sense that it is declared to be only imaginary; or it may be that it requires an exercise of the imagination to escape its vivid reality. It becomes a very real line in the trial of every criminal case by reason of the necessity of proving venue. It becomes very real in the service of process, or the demands of jury service, or the right of suffrage, or in a score of other governmental functions. The reality of the line in criminal prosecutions was first made apparent in the Ohio Constitution in Section 10, Article I, which enjoins
 
 “a
 
 speedy public trial by an-impartial jury of the county in which the offense is alleged to have been committed.” The line becomes more and more plainly marked by numerous statutes which have fixed the counties as the units of the general governmental subdivisions of the state. But it is said that the state
 
 *537
 
 is sovereign, that only the state can enact penal laws, and that the counties are mere enforcement units. It seems to us that this begs the question and becomes its own refutation. If county courts in criminal prosecutions are limited to county territorial jurisdiction, it follows that each county becomes responsible for the peaceful and orderly government within its territory. To say that an offense in all respects complete committed in one county is. barred by the conviction of another offense committed in another county, which offense is identical in its general aspects with such first named offense, on the sole ground that both offenses were committed the same day, though at different hours of the day, by the same agencies, and without interruption, is to make the one county mentor of law enforcement in the other. Public opinion enters largely into the character of law enforcement. The practical value of a penal statute is found in the quality of its enforcement by the executive and judicial agencies of county units. It is divulging no secret to state that the issue in our elections frequently relates to policies of strict and liberal enforcement of law. Lax enforcement has become such an acute issue throughout the length and breadth of the land that a national commission has been appointed to study the problem. The responsibility of a single county cannot be adequately met if it is dominated and controlled by another or other counties. Violators of the liquor laws regularly cross our state from border to border, transporting cargoes of liquor in high-powered autos at frightful speed, without interruption, and to the menace of our citizens. If a nomi
 
 *538
 
 nal fine imposed in a single county must be accepted as a just punishment for such flagrant offenses committed in twenty counties, the situation is nothing short of calamitous.
 

 One of the majority opinions expressly so concedes, and it is believed that every member of this court concurs in the soundness of the decisions in
 
 United States
 
 v.
 
 Lanza,
 
 260 U. S., 377, 43 S. Ct., 141, 67 L. Ed., 314;
 
 Koch
 
 v.
 
 State,
 
 53 Ohio St., 433, 41 N. E., 689, and other cases decided by this court, which declare that, when the same transaction violates a city ordinance, a state law1, and a federal law, the act may be prosecuted and punished by each of those jurisdictions. It is argued from this well-settled principle that they must be three separate and distinct sovereignties. This does not by any means follow. As between the state and the nation the dual sovereignty is definitely established. As between the state and its municipalities, the contrary is established. The question whether cities in Ohio, under the home rule provisions, become
 
 “imperium in imperio”
 
 was the issue in the case of
 
 City of Cleveland
 
 v.
 
 Public Utilities Commission,
 
 100 Ohio St., 121, 125 N. E., 864. In that case, Judge Wanamaker dissented from the majority opinion on the sole ground that the city under the home rule provisions of the Constitution of 1912 constitutes a separate sovereignty. That this was the issue between him and the other members of the court is clearly stated at the bottom of page 137 of 100 Ohio State, 125 N. E., 864, 868, of the opinion, and in the discussion which followed through several pages. All the other judges except one took the contrary view. A muni
 
 *539
 
 cipality in Ohio does have the right to adopt penal ordinances to govern the conduct of its citizens within the territorial limits of the city, but it does not follow that the city has a separate sovereignty on that ground. It has that power partly because it has been delegated to it by the general assembly and partly because of the provisions of the Constitution of 1912. Even the constitutional amendment of 1912 which confers that power expressly limits the power by providing that its ordinances must not be in conflict with general laws. This principle has been declared several times by this court since 1912 in interpreting the constitutional provision. The nature of the authority of cities in adopting penal ordinances and enforcing them becomes extremely important in the discussion of this case, because it throws light upon the application of the theory of the imaginary line between counties. There is no imaginary line between cities, neither is it an imaginary line between cities and the county line, or between counties having other counties located between them. A high-powered motor car can run from Lucas county to Belmont county, in making the trip between Detroit and Pittsburgh, in only a few hours, and it requires a wide stretch of the imagination to see no difference between Lucas county and Belmont county and to hold therefore that a prosecution for transportation in Lucas county is a bar to a prosecution for transportation in Belmont county.
 

 All members of this court held that the county line was quite real in two cases recently decided:
 
 State
 
 v.
 
 Jerkovich,
 
 and
 
 State
 
 v.
 
 Chalikes, ante,
 
 35, 170 N. E., 653.
 

 
 *540
 
 The merry-go-round illustration in one of the majority opinions is not convincing. A person riding on the merry-go-round intends to travel in a circle and arrive at the starting place without stopping. It is wholly different with the liquor violator in a high-powered automobile carrying a large cargo of liquor intended for distribution in a far distant county or counties. The majority opinions when reduced to their last analysis raise a question of legislative policy more than a question of judicial principles. One of the majority opinions states : “While this is a liquor case, the same rule would apply to every offense against our laws. ” We agree that this is true, and desire to give a few illustrations of the dangers of the majority opinions. Being found in a state of intoxication is punishable by' Section 13194, General Code. If a person already inebriated should be transported swiftly from Fremont, in Sandusky county, to Norwalk, in Huron county, no one doubts that he would be subject to punishment in both places. Having possession of burglar’s tools Is punishable by Section 12439, General Code, and an offender is no less guilty because the possession in two cities in adjoining counties relates to the same burglar’s tools. Having counterfeit money in possession is punishable by Section 13100, General Code, and counterfeit money is certainly as dangerous an instrumentality in one county as in the other.
 

 Let us suppose that a desperate criminal who has escaped from the penitentiary drives his auto at a perfectly lawful rate of speed, and in every respect in a lawful manner, through two or more counties, all the while carrying a concealed weapon. Let ns
 
 *541
 
 suppose that in each county through which he passes the authorities have wanted to arrest him, but have made no effort to do so because of knowledge of his carrying the weapon. Would it be said that he is only punishable in one county?
 

 The automobile has acquired a speed record of 231 miles an hour. Manifestly such a speed, or even 150 miles per hour, is inherently dangerous to any one who may happen to be on the highway while a speedster is traveling at that rate. Let us suppose that such a speedster crosses two or three counties without stopping and without interruption all the while maintaining a speed of 150 miles an hour. Will not the majority judgment in this case forbid prosecution in more than one county?
 

 It is freely conceded that the whole state of Ohio constitutes a single, sovereignty and that it requires all of the political subdivisions of the state to make up that single sovereignty. Each and every county constitutes a portion of that sovereignty, and it was planned in the Constitution and throughout all legislation in criminal processes that the county should constitute the enforcement unit, each county being responsible for the good conduct of all persons while within the territorial jurisdiction of such county, and that no other county should be held responsible for or permitted to interfere with that right.
 

 If a continuous act, however long continued, constitutes only a single offense, it follows that the offender may continue his operations indefinitely, thereby violating the peace and quiet of every community in the state and still be subject to a single punishment.
 

 
 *542
 
 The indictment in Huron county alleged the transportation of liquor between termini both of which were within the territory of that county. It was necessary to prove at the trial that the transportation was within that county. Failure to prove venue, that is to say, that the transportation was within the county, would have been fatal.
 

 The indictment in Sandusky county likewise alleged and proved a transportation within Sandusky county. Every member of this court concedes that the grand jury of each of those counties had the unquestioned right to return the indictments. The grand juries were not bound to inquire whether on the same day similar or even continuous transactions had occurred. The fact that the grand juries had a right to return the several indictments is proof which seems to us conclusive that offenses must have been committed in each of the counties. Venue being an essential element of the crime under our Constitution, so recognized by the Legislature and by the decisions of all the courts of Ohio for more than one hundred years, the crimes cannot be the same, and therefore a former conviction or acquittal cannot be pleaded in bar.
 

 The effect of the majority decision is to permit a transportation once begun to continue indefinitely throughout the state, and the resultant effect from that principle is that a crime once committed justifies the culprit in continuing his criminal processes indefinitely so long as there is no interruption. A further resultant is that a verdict of guilt may become a license to indefinite continuous pursuit of the same criminal course.