THE STATE v. FRANK M. LISTON, Appellant.—2 S. W. (2d) 780.

Division Two, February 18, 1928.

*Frank M. Liston* for appellant.

*North T. Gentry*, Attorney-General, and *A. B. Lovan*, Assistant Attorney-General, for respondent.

HENWOOD, C.—An information was filed in the Circuit Court of Boone County by which appellant was charged with the embezzlement of an automobile owned by one Josie Morris while the same was in his possession as a bailee. The jury found him guilty and assessed his punishment at imprisonment in the penitentiary for two years. He was sentenced accordingly and appealed.

Appellant is a negro and at the time in question was a practicing attorney at law in Columbia, Missouri, where he had resided for about two years. He had formerly practiced law in Kansas City,

Missouri, and continued to maintain a law office in Kansas City during his residence in Columbia. He declined the offer of the trial court to appoint counsel to represent him and expressed to the court his preference to conduct his own defense unassisted.

In substance, the proof made by the State shows that early in the evening of Saturday, October 30, 1926, appellant was visiting in the home of his friend, A. J. Morris, a negro who lived on a farm about two miles south of Columbia in Boone County. While appellant was there, officers of the law came and searched the premises and arrested Morris for violating the prohibition law and took him to the county jail in Columbia. This occurrence seemed to leave Morris's wife, Josie Morris, in great distress, and she was very desirous of getting her husband released from custody at the earliest possible moment. Appellant offered her his services without pay and gave her every assurance of accomplishing this purpose, provided he could get to Fulton, Missouri, twenty odd miles east of Columbia, and there confer with Judge Harris, the regular judge of the Circuit Court of Boone County, concerning the matter of a bail bond to be given by her husband. Appellant lived in the home of Professor J. B. Coleman, "head of the colored public schools in Columbia," and drove out to Morris's place in Coleman's automobile on the Saturday evening mentioned. Josie Morris had a Studebaker Roadster (Sport Model) automobile which her husband had bought and given to her about one year before that time. Appellant asked for the use of her car on the trip to Fulton, saying that his car was not in good running order and that he could make a quicker trip in her car. After considerable reluctance, she consented to his use of her car to go to Fulton, but not elsewhere, nor for any other purpose. Appellant further requested "a little money" to pay the charge of calling her by telephone from Fulton and reporting the result of his conference with Judge Harris and, for this purpose, she gave him $1.50. When she told appellant there was about five gallons of gasoline in the car, he asked for more gasoline. Shortly thereafter, her car was delivered to appellant at a gasoline-filling station in Columbia, where she had ten gallons of gasoline put in the car. Immediately after taking charge of the car, appellant started west out of Columbia with Kansas City as his objective. "About seven or eight miles" west of Boonville, Missouri, he, in some way, lost control of the car and it was caused to run into a ditch and turn over on its side, the car being thereby greatly damaged and appellant injured to some extent. He arranged for the car to be taken to a garage in Boonville and spent the night in that city at the home of Butler Nichols. About noon the next day, he proceeded on his trip to Kansas City by rail, first going east to Tipton on one train, and from there west to Kan-

sas City on another train. At Tipton he had a man by the name of George Williams to send a telegram to Professor Coleman at Columbia. The information contained in the telegram is not disclosed but, after receiving it, Professor Coleman notified Josie Morris that her car was in a garage at Boonville, where she later recovered it. Appellant remained in Kansas City until December 1, 1926, when he was arrested there on this charge and brought back to Columbia.

Josie Morris testified that, in discussing the importance of his trip to Fulton, appellant said: "I am in power. I belong to the court authority, and I am in power to get Morris out to-night. I will get a permit from Judge Harris and I am empowered to have him released at once. If I don't get Mr. Morris out of jail to-night I will report to God Almighty why not, and I will bring this dollar and a half back and lay it on the dining room table like you gave it to me. Mrs. Morris, I am going to bring results."

That, when she proposed that her son, Hubert, go along and drive the car, appellant said: "Oh, no, I can drive anything that runs on four wheels and has a motor in it. I have a white friend that means more to me than Hubert."

She further testified that appellant said nothing about going to Kansas City, and made no mention of starting *habeas corpus* proceedings, in connection with his plan of obtaining her husband's release on bond.

Her testimony was supported by that of her son, Hubert, in nearly every particular. He further testified that when he had ten gallons of gasoline put in his mother's car, immediately before turning the car over to appellant at the filling station, appellant "seemed to want more" and said to him: "I don't want to have any trouble. I am trying to make the trip so speedily. I want to be right back."

That, when his mother suggested that he go on the trip to Fulton with appellant, appellant said: "No, I have a white friend that is going with me, and one word from him means more to Judge Harris than you could ever do."

It further appears from the State's evidence that appellant stopped at the restaurant of Josie O'Neal in Boonville and asked Henry Kinney to go to Kansas City with him. When asked how he was traveling, he said: "In a Studebaker, in the fastest thing going." He referred to the car as "my car," and, when Kinney inquired if he had a car, he said: "Yes, they can't keep Frank Liston down." And it also appears that, while at the home of Butler Nichols in Boonville that night, he had a telephone conversation with a woman in Kansas City.

Professor J. B. Coleman, testifying for the State, said he was in Kansas City on the Saturday in question; that it was his plan to return to Columbia that night, and that his plans for the trip were

discussed with his family in appellant's presence. He further said that, following this difficulty, he and other friends of appellant urged appellant to return to Columbia, following this occurrence and before he was arrested in Kansas City and brought back by the officers.

Appellant took the stand and testified at length in his own behalf. He said he told Josie Morris, in order to obtain her husband's release, it would be necessary for him to go to his office in Kansas City and prepare *habeas corpus* papers, before going to Fulton to present the matter to Judge Harris; also, that Professor Coleman was in Kansas City and that he might be able to get him to sign her husband's bond. She fully understood his plans and said he could use her car on the Kansas City trip, provided he could not get another car. After his first talk with Josie Morris concerning his Kansas City trip he tried to get the Coleman car and also tried to get a car from Digges, the taxi man, but failed in both instances. He then reported to her that he would have to use her car and have expense money and plenty of gasoline and "she said she would arrange for the gasoline and arrange everything." He told her he could not drive well at night and asked her to let her boy go along and she refused, saying she was afraid to stay alone and her son had to look after the cows and had other chores to do. Before starting to Kansas City, he tried to get Bert Hazard of Columbia to go with him and after reaching Boonville tried to get Henry Kinney to go with him.

On cross-examination he admitted that he used the telephone for a long distance call in Boonville, but did not call Josie Morris by telephone or otherwise report to her his mishap with the car; that he knew busses and M. K. & T. trains were operated daily between Boonville and Columbia; that he did not consult the sheriff or prosecuting attorney of Boone County with reference to a bond for Morris before leaving Columbia for Kansas City. He said it was his impression that Professor Coleman was not to return from Kansas City to Columbia until Sunday, the day following the difficulty.

William Digges, the taxi man, testified that appellant asked for the use of his car to go to Kansas City and he refused to let him have it.

Mrs. Coleman, also offered as a witness for appellant, said that appellant asked for her car "to go to Fulton for Mrs. Morris" and she said "since you are going for Mrs. Morris, why not get Mrs. Morris's car."

Bert Hazard testified, on behalf of appellant, that he was requested by appellant to go with him from Columbia to Kansas City.

Appellant offered in evidence the certificate of title to the car, which bears the name of A. J. Morris as the owner thereof and shows no assignment or transfer of the car. Josie Morris, when called to the

stand by appellant in this connection, said that she listed the car with the tax assessor as her property.

In rebuttal for the State, A. J. Morris testified that he bought the car and gave it to his wife, Josie Morris. W. W. Woods, County Assessor for Boone County, Missouri, as a witness, exhibited Josie Morris's assessment list of personal property, and appellant admitted that the list included the car. Professor Coleman testified that he had "considerable law library" in his home at Columbia and that appellant used it in his law practice.

I. The attack on the information is without merit. It pleads every essential element of the crime of embezzlement by a bailee, as defined by the statute, and, therefore, complies with the well-settled rule relating to crimes of purely statutory origin. [Sec. 3329, R. S. 1919; State v. Crosswhite, 130 Mo. 358, 32 S. W. 991; State v. Burgess, 268 Mo. 407, 188 S. W. 135; State v. Stevens, 220 S. W. l. c. 846.] The motion to quash the information was properly overruled.

II. Appellant's application for a change of venue, based on the alleged prejudice of the inhabitants of Boone County against him, was supported only by the affidavits of appellant and two other citizens. Moreover, the record shows that, when the trial court proposed to set a day for the hearing of such further proof as appellant might desire to offer, appellant informed the court that he had no further proof to offer in support of said application. Section 3973, Laws of 1921, page 206, provides that a petition for a change of venue "shall be supported by the affidavit of petitioner and the affidavit of at least two credible disinterested citizens of the county where said cause is pending and the truth of the allegations thereof shall be proved, to the satisfaction of the court, by legal and competent evidence, and the prosecuting attorney may in such case offer evidence in rebuttal of that submitted in support of such application." This section further provides that in all counties having a population of less than 75,000 inhabitants, which includes Boone County, a petition for a change of venue supported by the affidavits of five or more credible disinterested citizens residing in different neighborhoods of the county where the case is pending, shall be sustained and a change of venue granted, "as of course, without additional proof." It is apparent at once that appellant's application for a change of venue, with only two supporting witnesses and no additional proof, failed to meet the requirements of the law and that the trial court committed no error in overruling the same.

III. On the day appellant's case was called for trial, he filed a "Challenge To The Array" or a motion to quash the regular panel of jurors, on two grounds: first, because all of said jurors were white men and were unlawfully drawn and selected for the purpose of excluding negroes from membership on said panel, thereby depriving him of his constitutional right to a trial by a jury of his peers; second, because on the day of his arraignment, the trial judge made certain prejudicial remarks with reference to him, which were published by the Columbia Daily Tribune, a daily newspaper of wide circulation in the. City of Columbia and Boone County, thereby causing said jurors to be prejudiced against him. This motion was supported by no proof except the affidavit of appellant. In opposition to the motion, counter-affidavits by George S. Starrett, the prosecuting attorney, and Howard B. Lang, the official court reporter, were submitted, in which the charge of prejudicial remarks by the trial judge was denied. There being no proof to support the statements contained in the motion, either as to the unlawful drawing and selection of said jurors or as to the publication of prejudicial remarks of the trial judge in the Columbia Daily Tribune, the motion was properly overruled.

IV. Appellant complains of the action of the trial court in not permitting him to put in evidence certain statements made by him to Henry Kinney, Bert Hazard and William Shelby, concerning his trip to Kansas City and as to when he expected to return to Columbia. All of such evidence was purely self-serving in character and the State's objections thereto were properly sustained.

V. The contention of appellant that the evidence is not sufficient to sustain his conviction on this charge cannot be upheld. When the State started to prove the value of the automobile in question, appellant admitted that it was reasonably worth $500. We think the proof was sufficient to establish Josie Morris's ownership of the automobile, by gift from her husband. In any event, her undisputed possession, charge and control of the automobile, at the time it was loaned by her to appellant, was sufficient proof of ownership as against appellant. [State v. Montgomery, 181 Mo. 19, 79 S. W. 693; State v. Carroll, 214 Mo. 392, 113 S. W. 1051; State v. Williams, 183 S. W. 308.] According to the testimony of Josie Morris and her son, appellant was granted the use of the automobile for the purpose of driving it to Fulton and back, and not elsewhere, nor for any other purpose. His promises and assurances of a speedy trip and quick results in obtaining the release of

Josie Morris's husband from custody induced the loan of the automobile to him; even then, after much reluctance on the part of Josie Morris, he opposed her suggestion that her son go along and drive the automobile, giving no better reason therefor than that he had a "white friend" who could be of more assistance to him. He seemed anxious to have "plenty of gasoline." He asked for and was given money to pay for telephoning Josie Morris from Fulton the result of his proposed conference with Judge Harris. After getting possession of the automobile, he failed to take a single step toward arranging a conference with Judge Harris. He did not even consult the sheriff or prosecuting attorney at Columbia on the matter of a bail bond for Josie Morris's husband. He knew that Professor Coleman, whom he had in mind as a bondsman for Morris, would return to Columbia that night or not later than the next day. Instead of starting *east* to Fulton, he started *west* to Kansas City. After damaging the automobile and after abandoning the same at Boonville, he did not notify Josie Morris of his accident and did not return to Columbia until he was arrested in Kansas City, a month later, and was brought back by the officers. The minute he left Columbia and started to Kansas City he was guilty of converting the automobile to his own use. This exercise of dominion over the automobile without the owner's consent was the wrongful act which the law condemns. The law measures his criminal intent by this act and will not enter upon an inquiry with him as to his further intention of returning the automobile to its owner at a later date. It was not necessary for the State to plead or prove any specific intent on the part of appellant. However, his felonious and fraudulent intent can very reasonably be inferred from the facts and circumstances developed by the State in making its case. Appellant's contradictions of the testimony of Josie Morris and her son, his own testimony that he started to Kansas City in the automobile with the knowledge and consent of Josie Morris, and his explanation of the incriminating circumstances against him, merely presented an issue for the jury, and, it is our conclusion that the evidence is amply sufficient to sustain the finding of the jury against him. It follows that the demurrers to the evidence were properly overruled. [State v. Julin, 292 Mo. 264, 235 S. W. 818; State v. McWilliams, 267 Mo. 437, 184 S. W. 96; State v. Moreaux. 254 Mo. 398, 162 S. W. 158; State v. Lentz, 184 Mo. 223, 83 S. W 970.]

VI. Another contention is that appellant's Instruction 5, relating to the presumption of innocence and the rule of reasonable doubt, should have been given. Instruction 3, given on behalf of the State, correctly declared the law on this phase of the case. Therefore, no error was committed in refusing appellant's requested instruction which covered the same

rules of law. [State v. Mitts, 289 S. W. 935; State v. Broyles, 295 S. W. 550.]

VII. In his motion for a new trial, appellant attacked the State's instruction numbered 1, on the ground that it misdirected the jury as to the range of punishment prescribed for the offense charged. This complaint must be sustained. Section 3329 of the Revised Statutes of 1919, on which this prosecution is based, provides that any person convicted of this offense shall "be punished in the manner prescribed by law for stealing property of the nature or value of the article so embezzled, . . ." Section 3313 deals with three different classes of property in fixing the punishment for grand larceny, and, in the first of such classifications, says that the stealing 'of an automobile or other motor vehicle shall be punished "by imprisonment in the penitentiary not exceeding ten years." Obviously, the trial court followed this statute, as the instruction complained of so advised and so directed the jury as to the range of punishment in this case. Section 29 of the Motor Vehicle Act of 1921 provides that any person who shall be convicted of feloniously stealing any motor vehicle, or any part thereof, of a value of $30 or more, "shall be punished by imprisonment in the penitentiary for a term not exceeding twenty-five years or *by confinement in the county jail not exceeding one year, or by fine not exceeding one thousand dollars ($1000) or by both such fine and imprisonment.*" (Italics ours.) Moreover, Section 31 of said act provides that all laws or parts of laws contrary to, inconsistent or in conflict with any of the provisions of said act are repealed, and the repeal of such laws is properly referred to and covered by the title of said act. [Laws 1921, 1 Ex. Sess., pp. 76, 105, 106.] Thus, it plainly appears that the jury was improperly instructed as to the range of punishment for this offense, as prescribed by law at the time in question, and that appellant was thereby deprived of a substantial right; that is, the right to have the jury consider a less severe punishment than the minimum punishment fixed by the instruction mentioned. In this connection, it should be noted that the jury assessed appellant's punishment at the lowest mark fixed by said instruction.

Other assignments of error relate to matters which will not likely occur on another trial of the case and, for that reason, such assignments will not be considered in this opinion.

On the whole, this case was fairly and impartially tried, but because of the failure of the trial court to properly instruct the jury on the range of punishment prescribed for the offense charged, the judgment is reversed and the cause remanded for another trial. *Higbee* and *Davis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. All of the judges concur.