STATE of Missouri,
Plaintiff–Respondent,

v.

Herbert CLINE, Defendant–Appellant.

No. 73162.

Supreme Court of Missouri,
En Banc.

May 3, 1991.

William E. Erdrich, St. Joseph, for defendant-appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HIGGINS, Judge.

Herbert Cline was convicted by a jury of possessing methamphetamine, section 195.-202, RSMo 1986. The jury assessed his punishment at imprisonment for five years; judgment was entered accordingly; the Court of Appeals, Western District, affirmed the judgment. This Court granted transfer to consider whether the trial court erred in giving Instruction 5, the verdict-directing instruction. Because of the stated error, the judgment must be reversed and the cause remanded for new trial.

## I.

■ Preliminary to consideration of the instruction question is the need to address appellant's attack on the sufficiency of evidence to sustain his conviction. Appellant asserts there was no evidence to show: that defendant was ever in possession of any substance; that he had exclusive control or dominion over the area where the substance was found; that he was ever aware of the substance; that he had been on the premises that day, week or month. These assertions are considered to include also a challenge with respect to evidence of awareness of the nature of the substance in question. *See State v. Barber,* 635 S.W.2d 342, 343 (Mo.1982).

In a review of whether sufficient evidence existed from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt, this Court accepts as true all the evidence favorable to the verdict, including all favorable inferences properly drawn from the evidence, and disregards all evidence and inferences to the contrary. *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989). So tested, the evidence refutes appellant's contentions and shows the State made a submissible case. The court did not err in refusing to direct the acquittal requested by defendant.

The information charged that the offense occurred on March 3, 1989, in DeKalb County. The trial took place in September 1989.

Jamie Healy, age 16, lived until March 3, 1989, with her mother Elizabeth Healy, her sisters Kim, 15, and Linda, 14, and the defendant, whom she described as "Mom's boyfriend." They lived in a house in rural DeKalb County and had lived there since 1979. There were no other occupants. Her mother and defendant slept in "the big bedroom," Jamie slept in a "bedroom down the hall," and her sisters slept in another bedroom. Jamie on occasion would go into the big bedroom "to put clothes in and just to see what was in there. I helped with the washing and drying. When [defendant's] clothes were washed and dried, I put them away for him."

In the big bedroom was a tall dresser with several drawers. On March 2, 1989, Jamie went into the big bedroom and looked in a drawer of the dresser. She did not take anything out. In the drawer "was a plastic bag which had some rock stuff in it and white powder stuff with a stringer and a plastic bag." She did not look in other drawers. Jamie did not know how the items she described got into the drawer. Sitting on top of the dresser "was some little brown bottles that was like in a candle holder or styrofoam cup." Jamie acknowledged that her mother used the dresser and had some clothes in there, "but not in the same drawer that the stuff was in.... The drawer that the stuff was in was Herbie's drawer." Jamie used the big bedroom "just to go to the bathroom."

After seeing "these items," Jamie told a friend, and the friend's mother took Jamie to the courthouse where she gave the prosecutor a written statement. Jamie also stated that defendant's work schedule was from 3:30 p.m. to 11:00 p.m. and that defendant was present when Jamie left the house about 7:30 a.m. on March 3.

Sheriff McFee, at 3:30 p.m. on March 3, executed a search warrant at the Healy residence; Trooper Kimberling assisted. Defendant was not present. The sheriff searched the dresser mentioned in Jamie's testimony. In the "drawers" he found some men's clothing, socks and underwear. He also seized some items, which he turned over to Trooper Kimberling who placed them in evidence bags. Most of the items seized were in the upper part of the dress-

er. Trooper Kimberling also looked in the drawers of the dresser. The general contents of the dresser were men's clothing. On top of the dresser was a clear vial, State's Exhibit 2, which was removed from a styrofoam cup. State's Exhibit 3 was a "small piece of slick paper that's folded, [it] contained a white powdery substance.... This came out of one of the drawers in [the dresser]." The other items in that drawer "was mostly socks, men's socks." Kimberling delivered the exhibits to chemist Gerhardt. There were no women's clothes in the dresser.

Chemist Gerhardt found that State's Exhibit 2, the clear glass vial, contained methamphetamine and that State's Exhibit 3 contained powder which contained methamphetamine.

The foregoing evidence entitled the jury to find that State's Exhibit 3 was in a dresser drawer used exclusively by defendant and that defendant had been present in the house just a few hours before the officers' discovery of Exhibit 2 and Exhibit 3. Contrary to defendant's contentions, there was evidence that defendant was in possession of methamphetamine and had exclusive control over the area, the drawer, in which State's Exhibit 3 was found. In particular, the presence of the methamphetamine, concealed in a styrofoam cup and among the defendant's garments alongside such paraphernalia as a vial, a candle holder, and folded slick paper, on top of the dresser and in the drawer allocated to the defendant, who had been on the premises the morning of the search and had lived there for over 10 years, also entitled the jury to find the defendant was aware of the nature of the methamphetamine in question. *State v. Lockhart*, 501 S.W.2d 163 (Mo.1973); *Barber*, 635 S.W.2d 342; *State v. Zimpher*, 552 S.W.2d 345 (Mo.App.1977); *State v. Pacchetti*, 729 S.W.2d 621 (Mo.App.1987).

## II.[1]

■ Appellant contends the trial court committed plain error (Rule 30.20) in giving

Instruction 5 for the reason that the instruction misdirected the jury as to the range of punishment in that it overstated the maximum term of imprisonment.

Instruction 5 read, in pertinent part:

"If you do find the defendant guilty of possessing methamphetamine, you will assess and declare one of the following punishments:

1. Imprisonment for a term of years fixed by you, but not more than twenty years...."

In 1989, after the date of the alleged offense but prior to the jury trial, the maximum term of imprisonment was reduced to seven years. § 195.202.2, RSMo (Supp. 1990); §§ 558.011.1(3) and 1.160(2), RSMo 1986. The State's brief concedes that "under the new statute [§ 195.202], defendant could be sentenced to a term not to exceed seven years." During final argument to the jury, the prosecutor twice emphasized the 20–year limit provided in Instruction 5.

■ For instructional error to rise to the level of plain error, the trial court must have so misdirected or failed to instruct the jury as to cause manifest injustice or miscarriage of justice. Defendant bears the burden of establishing manifest injustice. *State v. Parkus*, 753 S.W.2d 881, 888 (Mo. banc 1988). The determination whether plain error exists must be based on a consideration of the facts and circumstances of each case. *State v. Sanders*, 541 S.W.2d 530, 533 (Mo. banc 1976). For the reasons to follow, the overstatement of the maximum term of imprisonment in Instruction 5 in this case was plain error requiring a new trial.

This Court on several occasions has been confronted with the problem of an instruction that misstated or insufficiently stated the range of permissible punishment. Such error was held to be reversible in *State v. Sands*, 77 Mo. 118 (1882); *State v. McNally*, 87 Mo. 644 (1885); *State v. Milligan*, 170 Mo. 215, 70 S.W. 473 (1902); *State*

---

1. This part of the Court's opinion is taken from material provided by the Honorable George M.

Flanigan, sitting as Special Judge in this case.

*v. Fair,* 177 S.W. 355 (Mo.1915); *State v. Britton,* 183 S.W. 295 (Mo.1916); *State v. Duddrear,* 309 Mo. 1, 274 S.W. 360 (1925); *State v. Hurt,* 285 S.W. 976 (Mo.1926); *State v. Liston,* 318 Mo. 1222, 2 S.W.2d 780, 784 (1928); *State v. Bevins,* 328 Mo. 1046, 43 S.W.2d 432 (1931); and *State v. Harper,* 353 Mo. 821, 184 S.W.2d 601 (1945).

In *Sands,* the instruction overstated the maximum fine and failed to state the minimum term of imprisonment. In *McNally,* the instruction overstated the minimum term of imprisonment. In *Milligan,* the instruction overstated the minimum and the maximum terms of imprisonment. In *Britton,* the instruction overstated the minimum term of imprisonment. In *Duddrear,* the instruction failed to state the maximum term of imprisonment. In *Bevins,* the instruction told the jury that a permissible punishment was imprisonment in the penitentiary for a term not exceeding 2 years but failed to state that 2 years was the least imprisonment in the penitentiary that could be assessed. In *Fair, Hurt, Liston* and *Harper,* the instruction overstated the minimum punishment.

In *Sands, McNally, Milligan, Fair, Britton, Hurt, Liston,* and *Harper,* the punishment assessed by the jury was within the statutory limits, but that did not insulate the case from reversible error.

Instruction error with respect to range of punishment was nonprejudicial and the convictions were affirmed in *State v. Burr,* 81 Mo. 108 (1883); *State v. Tull,* 119 Mo. 421, 24 S.W. 1010 (1894); *State v. Miller,* 292 S.W. 440 (Mo.1927); *State v. Watson,* 92 S.W.2d 103 (Mo.1936); and *State v. Rollins,* 449 S.W.2d 585 (Mo.1970).

In *Burr,* there was no prejudice to defendant because the jury assessed a $5 fine, the statutory minimum punishment. In *Tull,* the jury assessed punishment at 5 years, but the trial court reduced it to the statutory minimum of 2 years. In *Miller,* where the motion for new trial did not preserve the issue, the jury assessed a

term of 7 years, which the trial court reduced to 4 years and 10 months.[2] In *Watson,* there was no prejudice because the jury assessed the statutory minimum punishment. In *Rollins,* the instruction understated the minimum term of imprisonment, an error favorable to defendant.

The role of the jury in assessing punishment is prescribed in section 557.036, RSMo 1986, and Rule 29. Except in two situations, neither present here, section 557.036 requires the court to instruct the jury as to the range of punishment authorized by statute and upon a finding of guilt to assess and declare the punishment as a part of its verdict. If the jury returns a verdict and declares a term of imprisonment as provided in section 557.036.2, the court shall decide the extent or duration of sentence or other disposition to be imposed under the circumstances, giving regard to the nature and circumstances of the offense and the history and character of the defendant, and render judgment accordingly, § 557.036.1, except that any term of imprisonment imposed cannot exceed the term declared by the jury unless the term declared is less than the authorized lowest term for the offense. In that event the court cannot impose a term of imprisonment greater than the lowest term provided for the offense. § 557.036.3.

In all cases of a verdict or a conviction for any offense where by law there is an alternative or discretion as to the kind or extent of punishment to be imposed, the jury may assess and declare the punishment in its verdict except as otherwise provided by law. Rule 29.02(a). Where the jury agrees upon a verdict of guilty but fails to agree upon the punishment or does not assess such punishment by its verdict, the court shall assess and declare the punishment and render judgment accordingly. Rule 29.03. Where the jury finds a verdict of guilty and assesses a punishment not authorized by law, the court shall assess and declare the punishment. *Id.* If the jury assesses a punishment above the limit

---

**2.** *Tull* and *Miller* were decided prior to *State v. Bevins,* 328 Mo. 1046, 43 S.W.2d 432 (Mo. banc 1931), where the Court held the trial court had

no power to reduce the punishment if the jury had been misdirected on that issue.

prescribed by law for the offense for which defendant is convicted, the court shall pronounce a sentence and render a judgment within the statutory limits prescribed for the offense. Rule 29.04. The court shall have power to reduce the sentence to within the statutory limits for the offense of which the defendant is convicted if it finds that the punishment is excessive. Rule 29.05. If the jury assesses a punishment below the limit prescribed by law for the offense of which the defendant is convicted, the court shall pronounce sentence and render judgment according to the lowest limit prescribed by law. Rule 29.06.

In *Duddrear*, 274 S.W. at 361, this Court discussed the statutory counterpart of what is now Rule 29.04:

> The statute (section 4050, R.S.1919), authorizing the court, if the jury assess a punishment in excess of that prescribed by law, to disregard the excess and pronounce sentence and render judgment according to the highest limit prescribed by law in regard to the particular case, if it had been observed, could not be invoked to sustain this conviction. The purpose of this statute is to enable the trial court to render a correct judgment where the jury has been properly instructed as to the degree of punishment and returns a verdict in disregard of such instruction and in excess of the legal limit; but the statute confers no power of amendment on the trial court where the error, as here, consists in a misdirection by the court itself. *State v. Britton* (Mo.Sup. 1916) 183 S.W. 295.

The foregoing language was quoted with approval in *Bevins*, 43 S.W.2d at 436–437.

■ The constitutional right to trial by jury in a felony case does not extend to the issue of punishment, *State v. Daugherty*, 484 S.W.2d 236, 239 (Mo.1972). This Court in *Bevins*, 43 S.W.2d at 434–35, discussed the statutes that find their essential counterparts in Rule 29.02(a), 29.03, 29.04, 29.05 and 29.06 and said:

> [W]e think it apparent that the purpose of the foregoing statutory provisions was to place upon the jury the duty, not merely to grant the privilege, of deter-mining the punishment if they can agree thereon and to deny to the court authority to determine the punishment except where the jury has failed to perform the duty primarily devolving upon it, giving the court the further power, in its discretion, of reducing, but not increasing, a punishment legally assessed by the jury. Correlatively, a defendant would have the right to have the jury perform the duty so imposed by the statute, unless we assume that the duty was imposed for the sole benefit of the state with no concern for the defendant, which we think should not be assumed. Of course, the provision cannot be regarded as a privilege granted for the benefit of the jury.

\* \* \* \* \* \*

> Many more expressions of this court might be cited indicating the view that the duty of fixing the punishment where there is an alternative is by statute placed primarily upon the jury and that the court may exercise that power only when the jury has failed to agree or properly to discharge its duty in that regard. We have found none to the contrary. The duty being thus imposed upon the jury, the defendant certainly has a corresponding right to have that duty properly and intelligently performed, and to the end that it may be so performed it is necessary that the jury be properly instructed as to the applicable law.

\* \* \* \* \* \*

> But [defendant] was entitled to have the jury correctly and fully informed as to the various punishments that might be assessed.

The statutory counterparts to Rule 29.-02(a), 29.03, 29.04, 29.05 and 29.06 were, respectively, sections 546.410, 546.440, 546.-460, 546.430 and 546.450, RSMo 1969. Those statutes were repealed, effective January 1, 1979 (L.1977, S.B. No. 60, p. 658, § 1), when section 557.036 became effective. The foregoing principles as expressed in *Bevins* remain sound with re-

spect to the present rules and section 557.-036.

■ Under section 557.036.3, unless the term of imprisonment declared by the jury is less than the statutory minimum, the court has no power to impose a term of imprisonment exceeding the term declared by the jury. Defendant's right to that limitation upon the court's authority and to a correct instruction as to the range of punishment were infringed by the challenged language of Instruction 5, which overstated the maximum term of imprisonment. That the punishment assessed by the jury was within the statutory range does not remedy that infringement. The prejudice of the misdirection was further exacerbated by the prosecutor's argument and emphasis.

■ Rule 29.04 does not authorize the trial court to amend the punishment declared by a jury where the jury has been misdirected on that issue. To the extent that *State v. Wright*, 797 S.W.2d 811 (Mo. App.1990), and *State v. Hall*, 670 S.W.2d 193 (Mo.App.1984), in their discussion of Rule 29.04 are inconsistent with this opinion, they should no longer be followed.

The purpose of the rules is to enable the trial court to render a correct judgment where the jury has been properly instructed as to the range of punishment. This purpose cannot be accomplished where, as here, the jury was not properly instructed. Defendant's contention entitles him to a new trial.

Appellant asserts other errors involving in-trial rulings that need not be considered because they may not arise on the retrial here ordered.

The judgment is reversed, and the cause is remanded for a new trial.

ROBERTSON, RENDLEN, COVINGTON and HOLSTEIN, JJ., concur.

BLACKMAR, C.J., concurs in separate opinion filed.

FLANIGAN, Special Judge, concurs in part and dissents in part in separate opinion filed.

BILLINGS, J., not sitting.

BLACKMAR, Justice, concurring.

I agree with Part I of the principal opinion.

I agree that Part II correctly expounds the authorities as they existed prior to *State v. Feltrop*, 803 S.W.2d 1 (Mo. banc 1991). Our courts consider the right to jury sentencing to be of value to defendants, in those cases in which the legislature has granted this right. If the jury is improperly instructed on the range of punishment, we cannot assume that the improper instruction had no effect on the sentence the jury returned, even though the actual sentence is within the statutory limits. It is reasonable to assume that the jury's actual sentence may have been influenced by what it was told as to the maximum authorized punishment.

In *Feltrop*, a death sentence was affirmed even though the instruction on aggravating circumstances, which directed the jury as to the conditions precedent to a death sentence, was erroneous. The Court held, however, that the trial judge, and not the jury, was the final sentencer, and that the judge, in ruling a motion to mitigate the sentence, had the authority to make findings, explicit or implicit, which would fill in the lacunae of the instruction. The Court was unmoved by the possibility that a properly instructed jury might not have returned a death sentence.

My dissent in *Feltrop* commanded little support and I shall not repeat my arguments here. It seems logical that, if the Court could correct the *Feltrop* instructions in proceedings after trial, it could make similar corrections here by confirming or adjusting the jury's recommendation in this case. But the principal opinion holds otherwise, and it is soundly grounded in the authorities.

I am disposed to suggest that *Feltrop* is a mutant decision which I hope will not be followed, and to concur in the principal opinion.

GEORGE M. FLANIGAN, Special Judge, concurring in part and dissenting in part.

I concur fully in part II of the principal opinion. I respectfully dissent from part I because, in my view, the evidence was insufficient to support the verdict.

It was incumbent upon the state to prove defendant's knowledge of the "nature of the substance." *State v. Barber*, 635 S.W.2d 342, 343–44 (Mo.1982). To similar effect *see State v. Gulley*, 776 S.W.2d 492, 494 (Mo.App.1989); *State v. Garrett*, 765 S.W.2d 314, 315 (Mo.App.1988); *State v. Vincent*, 755 S.W.2d 400, 401 (Mo.App. 1988); *State v. Moiser*, 738 S.W.2d 549, 558 (Mo.App.1987); *State v. Sand*, 731 S.W.2d 488, 491 (Mo.App.1987); *State v. Norwood*, 721 S.W.2d 175, 178 (Mo.App.1986); *State v. Carouthers*, 714 S.W.2d 867, 869 (Mo. App.1986); *State v. Caldwell*, 698 S.W.2d 566, 573 (Mo.App.1985); MAI–CR 3d 325.- 02. *See also State v. Green*, 629 S.W.2d 326 (Mo. banc 1982). The deficiency lies in the lack of evidence from which a reasonable juror might have found that defendant was aware of the nature of the substance in question, methamphetamine.

The portion of the principal opinion with which I disagree reads:

In particular, the presence of the methamphetamine, concealed in a styrofoam cup and among the defendant's garments alongside such paraphernalia as a vial, a candle holder, and folded slick paper, on top of the dresser and in the drawer allocated to the defendant, who had been on the premises the morning of the search and had lived there for over 10 years, also entitled the jury to find the defendant was aware of the nature of the methamphetamine in question.

At 824.

I agree that the evidence was sufficient for the jury to find that Exhibit 2, the clear glass vial, and Exhibit 3, a "small piece of slick paper that's folded," contained methamphetamine. I also agree that the jury could find that Exhibit 3 was in a dresser drawer used exclusively by the defendant, that defendant had been present in the house just a few hours before the officers discovered the two exhibits, and that defendant was in possession of methamphetamine and had exclusive control over the area, the drawer, in which Exhibit 3 was found.

The principal opinion describes the methamphetamine as having been "concealed in a styrofoam cup." There was evidence that the substance was in the cup, but that alone is not evidence of concealment. The principal opinion also refers to the cup being "alongside such paraphernalia as a vial, a candle holder, and folded slick paper." There was no testimony referring to those three items as paraphernalia. There was no testimony that any of them had in fact been used in the consumption of methamphetamine. There was no testimony that any such item is frequently used in connection with methamphetamine.

In my view, a vial is not, per se, an incriminating item, and the same is true of a candle holder and folded slick paper. Each of those items is commonly found in a household and may properly be used noncriminally. I see nothing incriminating about the possession of all three, or their proximity to the methamphetamine. This is not a situation where an article, such as certain burglary tools, may be unique so that a jury could properly infer that its intended use is criminal.

In short, I feel the jury could properly find, as they did, that defendant possessed methamphetamine, but I find nothing in the evidence to support the inference that defendant was aware of its nature. That insufficiency precludes remand for a new trial and defendant must be acquitted. *Barber*, 635 S.W.2d at 345; *State v. Basham*, 568 S.W.2d 518 (Mo. banc 1978).

In support of the quoted statement, the principal opinion cites *State v. Lockhart*, 501 S.W.2d 163 (Mo.1973); *Barber*, 635 S.W.2d 342; *State v. Zimpher*, 552 S.W.2d 345 (Mo.App.1977); *State v. Pacchetti*, 729 S.W.2d 621 (Mo.App.1987). In my view, each of those cases is distinguishable.

In *Lockhart*, the officers who entered defendant's residence "saw on the dresser a plastic bag which contained a hypodermic

syringe and needle, three eye droppers with hypodermic needles in them, three bottle caps and a small ball of cotton." *Lockhart*, 501 S.W.2d at 164. In response to a question by one of the officers, Lockhart stated that the items were his. He was charged with possession of apparatus for unauthorized use of narcotic drugs, not with possession of a controlled substance. This Court, in affirming the conviction, referred to the items as "narcotics paraphernalia." At the trial, officers testified as to "how the items were adapted for the unlawful use of narcotic drugs." No such testimony was given here.

In *Barber*, a conviction for possession of controlled substances was reversed because the evidence was insufficient to show defendant had actual possession of the controlled substances.

In *Zimpher*, the court of appeals affirmed a conviction for possession and control of marijuana in a quantity exceeding 35 grams. Among the items found to be in the possession of the defendant, including the marijuana, were "another bag containing a wood and brass pipe, cigarette papers and a plant material in the drawer of a night stand beside the bed in which the defendant and Johnson had been sleeping." *Zimpher*, 552 S.W.2d at 347. The plant material was marijuana.

In *Pacchetti*, a jury found defendant guilty of manslaughter, distribution of cocaine and possession of more than 35 grams of marijuana. Defendant did not challenge the sufficiency of the evidence with respect to the cocaine and marijuana offenses. Moreover, there was evidence that defendant had made statements concerning "opening on cocaine."

I would reverse the judgment.