STATE of Missouri, Respondent,

v.

Takyto R. CAMPBELL, Appellant.

No. WD 57324.

Missouri Court of Appeals,
Western District.

June 27, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 1, 2000.

Application for Transfer Denied
Oct. 3, 2000.

Kent Denzel, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

Before VICTOR C. HOWARD Presiding Judge, Judge JOSEPH M. ELLIS and Judge LAURA DENVIR STITH.

LAURA DENVIR STITH, Judge.

Takyto Campbell was convicted of assault in the first degree, in violation of Section 565.050 RSMo 1994, and assault in the second degree, in violation of Section 565.060 RSMo 1994. Judge Thomas J. Brown, III sentenced Mr. Campbell to twenty years imprisonment on the first-degree assault charge, and seven years imprisonment on the second-degree assault charge, ordering the sentences to run consecutively. Mr. Campbell appeals these convictions on the grounds that: (1) the trial court erred in admitting, over objection, the testimony of an eyewitness that it was "possible" Defendant had been wearing another hat over the one that the eyewitness said he saw Defendant wearing at the time of the charged crimes, because such testimony constitutes impermissible speculation and opinion testimony by a lay witness; (2) the trial court erred in refusing to allow Defendant to inform the jury that he would have to serve at least 85 percent of his sentence before being eligible for parole, because Section 557.036 RSMo 1994, which entitles Defendant to jury sentencing, creates a Due Process right to *informed* jury sentencing, which, he argues, includes the right to have the jury informed of the "85 percent rule"; and (3) the trial court plainly erred in admitting a police detective's testimony that "other subjects" had stated that Defendant was responsible for the crimes charged because this testimony constituted hearsay, the admission of which resulted in manifest injustice to him. Finding no prejudicial error in any of the respects alleged, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

During the early morning hours of December 6, 1998, a group of young people gathered in the Jefferson Plaza parking lot in Jefferson City, Missouri. Defendant Campbell arrived at the parking lot with two other men, and three women. He and his companions became involved in an ar-

gument with Mr. Robert Hoener and some of the other people present in the parking lot. After a short time, the argument escalated into a fist fight between Defendant and Mr. Hoener. The two men exchanged blows, and eventually Defendant and his friends got back into their car and left the scene.

Defendant and his friends proceeded to a home that Defendant shared with his brother, Terry Campbell. Terry and Ms. Sarah Early were at the house when Defendant arrived. Defendant asked Terry and Ms. Early if they knew where his "strap" was, in reference to his gun. Ms. Early did not see whether Defendant found a gun, but approximately five minutes later, Defendant left the house with his brother Terry.

Sometime later, Defendant returned to the parking lot with his brother and several other friends. One of his friends began arguing with Mr. Hoener, and the two soon began hitting each other. Several eyewitness accounts given at Defendant's trial indicate that, during this fist fight, Defendant walked around behind Mr. Hoener, drew a gun, and began firing at Mr. Hoener's back as he walked toward him. Defendant fired eight shots, several of which struck Mr. Hoener in his back and arms, and one of which struck Ms. Genny Ousley in the leg. After the shooting, Defendant and his friends left the parking lot on foot in the same direction from which they had arrived.

Defendant was arrested on December 7, 1998. On February 9, 1999, he was charged with one count of assault in the first degree in violation of Section 565.050, and with one count of assault in the second degree in violation of Section 565.060. Defendant's jury trial on both counts began on May 4, 1999. Several witnesses at the trial testified to having either directly or indirectly observed Defendant shoot Mr. Hoener. Mr. Ryan Halbert testified that his attention was on Defendant during the whole incident. He testified to seeing Defendant draw the gun, and fire it into Mr.

Hoener's back. Mr. Joshua Allee testified that, when he saw Defendant reach toward his waistband and "bring his hand up," Mr. Allee turned to run from the area, at which point he heard gunfire. Mr. Allee admitted to not having actually seen a gun before he turned to run. Mr. Jason Williams testified that, from the interior of his truck, he saw Defendant pull a gun, and before it was fired, ducked to the floor of his truck. He testified that he then heard gunfire. The victim, Mr. Hoener, could not identify Defendant as the shooter at trial, as he was facing away from the shooter at the time of the assault.

Details of the testimony of Mr. Halbert, Mr. Allee, and Mr. Williams varied slightly with respect to the color of the shooter's clothing and the color of the hat he was wearing. While Defendant claims this was because he was not the shooter, the State's evidence indicated that Defendant, according to some witnesses, changed some of his clothes when he went home. Some of the witnesses appeared to describe what he wore during the initial fight, while others described what he wore when he returned with his gun. During the State's case-in-chief, the prosecutor – presumably in an attempt to reconcile the conflicts amongst testimony given by the witnesses regarding the color of hat the shooter was wearing – asked two key eyewitnesses on direct examination whether it was "possible" that Defendant had a different-colored stocking hat on over the hat that the witnesses saw him wearing at the time of the charged crimes. Ryan Halbert, over Defendant's objection, was allowed to answer that yes, it was possible. Defendant failed to object to the same question as it was posed by the State to Joshua Allee, and Mr. Allee also responded that it was possible that the shooter had been wearing another hat.

Mr. Halbert, Mr. Allee, and Mr. Williams testified further that they had participated in a photographic array identification procedure, or photo "line-up", at the police station soon after the shooting incident, to determine whether they could

identify the shooter from amongst the arrayed photographs. All three witnesses identified Defendant as either having been the shooter, or as having been "present" during the shooting. All three testified concerning these prior identifications at Defendant's trial.

The officer responsible for investigating the December 6, 1998 shooting, Jefferson City police detective Larry Ooten, also testified at Defendant's trial. He testified that he interviewed Defendant's brother, Terry Campbell, near the time of the shooting, and that Terry told varying versions of the events of that evening. Detective Ooten testified that Terry initially told him someone other than Defendant had shot Mr. Hoener. Detective Ooten was then permitted to testify that he told Terry during the interview "that the other subjects had admitted to being at the scene of the shooting and had stated that Takyto, his brother, was responsible for the shooting." Detective Ooten further testified he had stated in his report that, when confronted with these statements, Terry lowered his head and began to weep, and, when prompted by the question, "did Takyto do the shooting?", shook his head yes. The Detective confirmed this report before the jury at trial.

Prior to closing arguments, Defendant asked to be able to inform the jury of Missouri's "eighty-five percent rule," codified at Section 558.019.3 RSMo 1994, under which, if the jury found Defendant guilty of first-degree assault – a "dangerous felony" as defined in Section 556.061 RSMo – he would be required to complete eighty-five percent of any imposed sentence of imprisonment before being eligible for parole. The court overruled this request and Defendant was not allowed to inform the jury of the "eighty-five percent rule" during closing arguments. During deliberations, the jury sent a note to the court, asking whether it could recommend a minimum number of years to be served. The court responded that the jury must be guided by the instructions, and upon being consulted by the court, defense counsel had no objections to this response.

The jury convicted Defendant of one count of first-degree assault and one count of second-degree assault. The jury recommended terms of imprisonment of twenty and seven years, respectively. On June 1, 1999, Judge Thomas J. Brown, III sentenced Defendant in accordance with the jury's assessment, and ordered the sentences to be served consecutively. This appeal follows.

## II. THE TRIAL COURT'S ADMISSION OF EYEWITNESS TESTIMONY WAS NEITHER ERRONEOUS NOR PREJUDICIAL

■ Defendant alleges, first, that the trial court erred in admitting, over his objection, the testimony of Mr. Ryan Halbert that it was "possible" that Defendant had been wearing another hat over the one that Mr. Halbert said he saw Defendant wearing just prior to the shooting, in that such testimony was speculative, and constituted impermissible opinion testimony by a lay witness. Specifically, Mr. Halbert testified for the State on direct examination as follows:

Q. Can you give a description of the Defendant that night when he was fighting Robert Hoener the first time?

A. He had some sort of hat on this head, and other than that I don't remember from the fist fights if he had on the same clothes when he come back or not.

. . . .

Q. What aspects of the Defendant were you focusing on? What were you looking at?

A. His face.

Q. When you saw the Defendant with the blue or black hat on his head, would it have been possible for him to have had another stocking hat on over what you saw him with and you did not notice it?

A. Yes.

MR. KING: Objection. Calls for speculation by the witness.

THE COURT: Overruled.

THE WITNESS: Yes, sir.

 We do not find that the trial court erred in admitting this testimony. We note, first, that, absent a clear abuse of discretion, an appellate court will not interfere with the trial court's ruling admitting or excluding of evidence. *State v. Kobel,* 927 S.W.2d 455, 459 (Mo.App. W.D.1996). Consequently, a trial court has wide discretion in admitting the testimony of lay witnesses into evidence. *See State v. Winston,* 959 S.W.2d 874, 877 (Mo.App. E.D. 1997). Although a lay witness is usually precluded from offering opinions, he or she may testify about facts within his or her personal knowledge. *See State v. Sanders,* 842 S.W.2d 916, 919 (Mo.App. E.D.1992). Thus, generally, a lay witness is permitted to testify as to "perceptible facts" regarding the event in question; i.e., what he hears, feels, tastes, and smells, as well as what he sees. *See Peterson v. National Carriers, Inc.,* 972 S.W.2d 349, 356 (Mo. App. W.D.1998) (affirming that lay witnesses are permitted to testify regarding "point of impact" with respect to an automobile collision, because such testimony is based upon "perceptible facts" within the personal knowledge of the witness which tend to show where an accident occurred).

The question whether it would have been possible for Defendant to have worn another hat on top of the one Mr. Halbert had seen him wearing just prior to the shooting asked for information that was well within the ambit of Mr. Halbert's personal knowledge of the events of the evening of December 6, 1998. He was not asked whether Mr. Halbert thought, hypothetically, that Defendant had switched hats or put one hat on over another. He was asked whether, given his view of Defendant's head, Defendant could have been wearing a second hat on top of the one Mr. Halbert had previously seen. Mr. Halbert's response was based upon quantifia-ble, perceptible facts that Mr. Halbert was in a position to observe on the night of the shooting. His testimony that yes, given his observations, it was "possible" that Defendant was wearing another hat over the one that he had seen Defendant wearing just prior to the shooting, simply expressed to the jury that, given his personal observation of Defendant, Defendant could have been wearing a second hat over the first one. He testified to what he saw, and only that. Therefore, the trial court properly overruled Defendant's objection to Mr. Halbert's testimony.

In any event, as the State notes, Mr. Joshua Allee also testified, without objection – in response to a nearly identical question – that it was possible Defendant could have been wearing another hat, and he just did not notice it. Mr. Halbert's testimony on this issue was thus merely cumulative. *See, e.g., State v. Gordon,* 915 S.W.2d 393, 398 (Mo.App. W.D.1996). Furthermore, defense counsel effectively cross-examined the witnesses as to their varying descriptions of Defendant's clothing, including his hats, and used this cross-examination to try to create doubt as to the identity of the shooter. In these circumstances, the State's single question to Mr. Halbert, coupled with his response, could not have been prejudicial. Point denied.

### III. APPELLANT WAS NOT ENTITLED TO INFORM THE JURY IN CLOSING ARGUMENT OF THE "EIGHTY–FIVE PERCENT RULE"

 Defendant also claims that the trial court's refusal to allow him to inform the jury of Missouri's "eighty-five percent rule" in closing argument violated his constitutional rights. As he recognizes, the constitutional right to trial by jury in a felony case does not extend to jury sentencing. *State v. McClanahan,* 954 S.W.2d 476, 481 (Mo.App. W.D.1997), citing, *State v. Cline,* 808 S.W.2d 822, 826 (Mo. banc 1991); *State v. Griffin,* 756

S.W.2d 475, 487 (Mo. banc 1988). Thus, any right Defendant has to jury assessment of sentence is solely a creature of statute. Defendant argues that Section 557.036 nonetheless gives him an interest protected under the Due Process Clause of the Fourteenth Amendment in "informed" jury sentencing, and Defendant argues this includes the right to have the jury informed of the "eighty-five percent rule." Section 557.036 states:

> 1. Subject to the limitation provided in subsection 3 of this section, upon a finding of guilt upon verdict or plea, the court shall decide the extent or duration of sentence or other disposition to be imposed under all the circumstances, having regard to the nature and circumstances of the offense and the history and character of the defendant and render judgment accordingly.
>
> 2. **The court shall instruct the jury as to the range of punishment authorized by statute and upon a finding of guilt to assess and declare the punishment as a part of their verdict,** unless (1) The defendant requests in writing, prior to voir dire, that the court assess the punishment in case of a finding of guilt, or (2) The state pleads and proves the defendant is a prior offender, persistent offender, dangerous offender, or persistent misdemeanor offender as defined in section 558.016, RSMo.

Sec. 557.036 RSMo 1994 (emphasis added).

█ We disagree that this statute gives Defendant a right to inform the jury of his earliest parole eligibility. While this Court has held that a state statute or regulation can create a constitutionally protected interest if it contains particularized substantive standards or criteria that significantly guide decision makers, and it uses mandatory language requiring decision makers to act in a certain way, *see, e.g., Bonds v. Missouri Dept. of Mental Health,* 887 S.W.2d 418, 421 (Mo.App. W.D.1994); *Howard v. Armontrout,* 729

S.W.2d 547, 549 (Mo.App. W.D.1987), Section 557.036 creates no such interest in informing the jury as to parole considerations. Nothing in this statute explicitly or implicitly states that, where a jury recommends the sentence, counsel may inform the jury of parole considerations such as the "eighty-five percent rule" set out in Section 558.019.3. To the contrary, it is generally held that such references in closing argument to future clemency and parole are improper. *See Nave v. State,* 757 S.W.2d 249, 254 (Mo.App. E.D.1988).

The only "mandatory language" included in Section 557.036 with respect to information of which the jury must be made aware is the clause indicating that the "court shall *instruct* they jury as to the *range of punishment* authorized by statute." Sec. 557.036 RSMo 1994 (emphasis added). Such statutory drafting implicates the maxim *expressio unius est exclusio alterius* – "the expression of one thing is the exclusion of another." *See General American Life Ins. Co. v. Barrett,* 847 S.W.2d 125, 133 (Mo.App. W.D.1993). That is, by stating only that the jury must be informed of the range of punishment, the statute implicitly states that the jury need not be informed of other collateral issues, such as parole eligibility. Thus, in the absence of any mandatory language in Section 557.036 indicating a state-created right to inform the jury of the "eighty-five percent rule," Defendant's claim that he was improperly denied that right without due process necessarily fails.

Defendant relies largely upon *State v. Cline,* 808 S.W.2d 822 (Mo. banc 1991), to support his contentions under this Point. The ruling in *Cline,* however, is distinguishable from the claims advanced in the instant case, because *Cline* involved a jury that was *improperly instructed* with respect to the *range of sentencing* applicable to the crime charged. *Id.* In that case, the alleged error clearly warranted a new trial under the terms of Section 557.036, because the error occurred with respect to *instructions* given the jury regarding the

*range of punishment.* No such error is alleged in the instant case, nor is there any indication in the record that the jury was improperly instructed as to the range of punishment. For these reasons, Point II is denied.

## IV. ADMISSION OF DETECTIVE OOTEN'S TESTIMONY WAS NOT PLAIN ERROR

In his third and final point, Defendant alleges that the trial court plainly erred in admitting a police detective's testimony that "other subjects" had stated that Defendant was responsible for the crimes charged. He argues such testimony constituted hearsay, the admission of which caused manifest injustice. Detective Larry Ooten testified during the State's case-in-chief that he interviewed Defendant's brother, Terry Campbell, near the time of the shooting, and that Terry told him varying versions of the events of that evening. Detective Ooten testified that Terry initially told him someone other than Defendant had shot Mr. Hoener. Detective Ooten was then permitted to testify that he told Terry during the interview that "other subjects had admitted to being at the scene of the shooting and had stated that Takyto, his brother, was responsible for the shooting."

Defendant argues that he preserved an objection to this testimony at trial. We disagree. Detective Ooten was explaining his questioning technique as to Terry, and said that he would leave the room periodically and check with other detectives, from whom he learned that Terry had been present at the shooting. Defense counsel objected to this testimony as hearsay, and the objection was sustained. The testimony was then as follows:

THE WITNESS: I explained to him that we learned that –

DEF COUNSEL: That's hearsay. Objection again.

PROSECUTOR: Judge, he's questioning a witness.

THE COURT: That's overruled.

PROSECUTOR: Thank you.

PROSECUTOR: Go ahead. You advised Mr. Campbell.

WITNESS: *I explained to Terry that the other subjects had admitted to being at the scene of the shooting and had stated that Takyto, his brother, was responsible for the shooting.*

*At this time Terry dropped his head, and I looked at him and I said, "Terry did the shooting"—or, "Takyto did the shooting, didn't he?" And he shook his head yes, and then he started to cry.*

PROSECUTOR: Did he tell you anything more about it then at that time?

WITNESS: Then he gave the story that the subjects had gotten in a fight, came back, picked up Terry and Uncle Benny (sic). They then drove back out there, they were dropped off.

The four of them walked up there. Uncle Benny started fighting with the subject that Takyto had gotten in a fight with.

PROSECUTOR: So now it's Uncle Benny fighting and not Terry fighting this person, right? Didn't he originally say he went up to fight this person?

WITNESS: No. That came out in another interview with Aziz. Terry's story was that he went up—they all went up there in a group and one subject came running up towards Terry, and Takyto pulled a gun to shoot at the subject that was running towards him, missed that subject, struck a female.

And then Uncle Benny was fighting with—Uncle Benny was fighting with Takyto—no. Uncle Benny—excuse me.

Uncle Benny is fighting with the white male subject that Takyto had gotten in a fight with, and at this time Taky-

to started shooting at him, and he thought he struck him several times. (emphasis added).

The only objection that Defense counsel made to any of this testimony was an objection based on hearsay when the detective began to say what he had explained to Terry. At that point, however, it was not evident that the detective would go on to say that other subjects had identified Takyto as the shooter. He just appeared to be generally describing his conversation with Terry. It may be that the court would have sustained an objection to the statement that others had identified Takyto; since no objection was made, we cannot know. Moreover, Defendant concedes that he omitted this issue from his Motion for New Trial. *See State v. Knese,* 985 S.W.2d 759, 769 (Mo. banc 1999). As he admits, he thus failed to preserve this issue, and so we review only for plain error. *See State v. Williams,* 976 S.W.2d 1, 3 (Mo.App. W.D.1998).

To be entitled to relief under the plain error standard, Defendant must show that the trial court's alleged error so substantially affected his rights that a miscarriage of justice or manifest injustice would occur if the error were not corrected. *State v. Bush,* 8 S.W.3d 173, 175–76 (Mo.App. W.D.1999). Whether manifest injustice occurred depends on the facts and circumstances of the particular case, and the Defendant bears the burden of establishing manifest injustice amounting to plain error. *State v. Rogers,* 964 S.W.2d 501, 503 (Mo.App. W.D.1998).

Defendant claims that manifest injustice resulted from the detective's repetition of his statement to Terry that other subjects had told the detective that they were at the scene of the crime, and that they saw Takyto do the shooting, because in this way the State was able to give "the jury statements from people not before the court, statements allegedly implying Takyto's guilt, and thus denying Takyto his Sixth Amendment right to confront those witnesses." However, Defendant's suggestion that the "other subjects" Detective Ooten was referring to were not before the court is mere speculation. He has identified nothing in the record that indicates that the persons to whom the detective referred were anyone other than the three witnesses to the shooting who in fact did testify at trial and identify Takyto – specifically, Ryan Halbert, Joshua Allee and Jason Williams. It was perhaps for this reason that, while his counsel cross-examined the detective about whether he had accurately recollected Terry's story, he did not cross-examine the detective at all about who these "other subjects" were, or what they allegedly said. It simply was not an issue. The focus of the detective's testimony was on the fact that Terry, too, identified his brother as the shooter, not on the words that the detective had used to get Terry to make this identification. There is nothing to support the suggestion that the purpose or effect of the detective's testimony was to get before the jury identification testimony of witnesses whom Defendant could not cross-examine.

Finally, we note that when guilt is established by overwhelming evidence, no injustice or miscarriage of justice will result from the refusal to invoke the plain error rule. *Williams,* 976 S.W.2d at 3. Here, not only did the three witnesses noted above identify Defendant as the shooter, but so did Defendant's brother. Defendant did not deny he was at the scene, and Sarah Early said he went home to get his gun. In light of this evidence, the vague reference by Detective Ooten to the fact that "other subjects" had identified Defendant could not have resulted in manifest injustice.

For all of these reasons, the judgment is affirmed.

Presiding Judge VICTOR C. HOWARD and Judge JOSEPH M. ELLIS concur.